GEORGE WADSWORTH, as Administrator, etc., Respondent, *v.* JOHN HEERMANS, Appellant.

(Argued June 1, 1881; decided June 14, 1881.)

MEM. of decision below (22 Hun, 455).

This action was brought originally by Joseph F. Hill, the present plaintiff's intestate. After the decision upon appeal to the General Term said Hill died, and the present plaintiff was substituted.

The action was replevin to recover possession of two town bonds. Defendant claimed as assignee of one Fellows, who died previous to the trial. Plaintiff's evidence was to the effect that the bonds were transferred to him by one Redbourn, in consideration of his agreement to procure and deliver up to Redbourn two promissory notes which the latter had given to Fellows, which agreement was performed by Hill. The bonds were payable to the order of the treasurer of the Utica, Horse-heads and Elmira Railroad Company. At the time of the purchase there was an indorsement in blank upon each of the bonds signed by said treasurer. After the purchase Hill put the bonds in a drawer exclusively used by him for his private papers, which was in a safe in an office occupied by Hill & Fellows. In the absence of Hill in Europe the bonds were taken from the safe by defendant. The latter gave evidence

tending to show that Hill was the agent of Fellows, and claimed that this agency accounted for Hill's possession of the notes, and that the purchase was for Fellows. The court held that the evidence authorized the submission to the jury of the question as to Hill's title. The bonds were produced on the trial, the blank in the indorsement was then filled up with the name of Fellows, written in by himself.

Hill, as a witness in his own behalf on the trial, was asked : " At the time you left those bonds in the safe was the name of Mr. Fellows in either of these indorsements ? " And also : " Was the name of Joseph Fellows anywhere in these instruments at that time ? " These questions were objected to on the ground that the evidence was incompetent under section 829 of the Code, and necessarily involved a personal transaction with Fellows, who was dead. The court say : " We do not think the inquiry involved any personal transaction between Hill and Fellows. It respected merely the then condition of the bonds. It neither affirmed nor negatived any personal transaction between the two. The insertion of his name in the blank might well have been the separate and independent act of Fellows, and not, in and of itself, a personal transaction between the two. Whether it was done with the consent or without the consent of Hill, because of a transfer by him, or through a mistake of Fellows, would have involved a personal transaction between the two. Those were the material inquiries and were excluded. That the name was not in the bonds when Hill left them in the safe amounted only to a description of the bonds and indorsement as thus left. Neither in its essential nature, nor by reason of the proofs, did it involve a personal transaction between the two, either by way of affirmation or denial. Both Hill's knowledge and Fellows' act were in their essential character separate and independent of each other. We must enforce the rule fairly, but draw the line somewhere. It is not always easy to do so with entire certainty and precision. We hesitate less in this case, because, if the line is not drawn at the point adopted, it is difficult to see where it can be drawn at all. Inferences may often be framed out of the most independent facts. When Hill testified that he bought the bonds of Redbourn, and put them among his

own papers in the safe, it might be said, inferentially, to negative any personal transaction with Fellows by which the bonds were to be bought for him. The rule must be applied in each case to the facts as they arise, but without pushing it to extremes beyond its natural application. It may also be observed that there is great justice and fairness in the ruling below. The assignee defending was allowed to show the condition of the bonds at one time with the name of Fellows in. Was it, then, improper for Hill to show their condition at another time with the name of Fellows out? Did not the dead man have enough of advantage when he was allowed to reach out from his grave and put into the middle of this trial his declaration in writing that he owned these bonds? The spirit and purpose of this provision of the Code is equality, to prevent undue advantage; and that purpose should be kept in view when border questions arise and lines of distinction are to be drawn. We think the courts below applied the rule fairly, and committed no error in overruling the objections."

*A. Hadden* for appellant.

*George B. Bradley* for respondent.

Finch, J., reads for affirmance.
All concur, except Folger, Ch. J., absent.
Judgment affirmed.