EDWARD P. STUART, AS TRUSTEE, ETC., APPELLANT, v. THOMAS J. PATTERSON AND OTHERS, RESPONDENTS.

*Evidence — when a party cannot testify as to the address on a package sent by express to a person since deceased — Code of Civil Procedure, sec. 829.*

In this action, brought to recover the possession of a farm, the defendant claimed that one Stuart, under whom the plaintiff claimed, had held the title to the farm in trust for the defendant to secure the payment of a certain sum of money, and that the said sum had been paid to Stuart. Stuart was a member of the firm of Freeland, Hoffman & Co., of New York, to which firm the defendant was indebted, as well as to Stuart, individually. Upon the trial evidence was given tending to show that in November, 1842, the defendant deposited a package of gold in an express office at Rochester, containing an amount of money less than the amount of his indebtedness to the firm. Testimony was given from which it might be inferred that the gold was sent to the firm, and that it had received it and sent the defendant its voucher therefor. It also appeared that the package was opened at the place of business of the firm by Stuart himself. The defendant was allowed, against the plaintiff's objection and exception, to testify that the package was addressed to Stuart, individually, and not to the firm, Stuart having since died.

*Held,* that it was error to admit this testimony.

That if it was admitted to show that the package was sent to Stuart, and not to the firm, it related to a personal transaction or communication, and was inadmissible under section 829 of the Code of Civil Procedure.

That if it was admitted simply as a part of the description of the package delivered to the carrier, it was immaterial and irrelevant. (BRADLEY, J., dissenting.)

Where the testimony of the surviving party will tend directly, or by proper inference, to prove a communication made, or a transaction had, between the witness and the deceased, under such circumstances as that it can be seen that the deceased, if living, might give testimony directly contradictory to that of the witness, or tending to repel the inference to be drawn therefrom, the testimony is inadmissible, provided the case, in all other respects, is within the statutes. (Per SMITH, P. J.)

APPEAL from a judgment, entered on the report of a referee, dismissing the complaint on the merits.

The action was brought to recover the possession of a farm situate in the county of Allegany, containing 435 acres, to which the plaintiff claimed title by virtue of a conveyance made by John M. Stuart, creating a trust.

The defendant claimed that he had the equitable title to the premises and was entitled to the possession thereof. The referee held that the defendant's claim was supported by the evidence and directed a judgment in his favor, which was entered and from which the plaintiff appealed.

It appeared that on the 4th day of April, 1837, the defendant purchased and took a conveyance of the premises from Curtis Prentiss and wife, which contained covenants of seizin and warranty and expressed a consideration of $1,785.75, under which he went into possession. That subsequently and prior to the 14th day of November, 1842, the land was sold upon the foreclosure of a mortgage, made before the said conveyance was given, upon these and other premises, and was purchased on such sale by the Hudson Fire Insurance Company, which was then doing business in the city of New York. That on the 14th day of November, 1842, the insurance company executed a deed in terms conveying the farm to John M. Stuart, who was a member of the mercantile firm of Freeland, Hoffman & Co., of that city, the consideration expressed in the deed being $800. That Stuart gave a bond of the same date conditioned for the payment of that sum to the insurance company, in installments of $300 in one year, and $500 in two years from its date, with interest, and a mortgage on the premises of like date and condition, to secure the payment of the same. The execution of the deed and mortgage were acknowledged on the 15th day of November, 1842, in the city of New York. Thereafter this bond and mortgage were paid by Stuart. There was evidence given tending to prove, and the referee found, that after the purchase by the Hudson Fire Insurance Company, and prior to the conveyance to Stuart, the defendant had negotiation with the insurance company for the redemption of the premises, which resulted in a proposition from the company to convey the premises to him or to such person as he should name,

for the sum of $800; that the deed of the insurance com. pany to Stuart was delivered by the company to the defendant; that before taking the deed he took the bond and mortgage to Stuart for execution, and delivered them to the insurance company at the time he received the deed from it; that he took the deed to his home, in the city of Rochester, and caused it to be recorded with the clerk of Allegany county.

On the 23d day of October, 1846, John M. Stuart executed to one John Minot Fosdick a deed conveying lands in the city of Brooklyn and also the land in question, and including a transfer of some personal property, in trust for the benefit of his wife and children, that is to say, to receive and pay to his wife Catharine E., the income during her life, and on and after her death to convey and transfer the property to the children then living of said John M. and Catharine E. Stuart. Shortly after that deed was made, and on the twenty-sixth day of the same month, John M. Stuart executed another deed of the premises mentioned in the complaint to said Fosdick, in trust for the same purposes, which was recorded in the Allegany county clerk's office December 7, 1846. John Minot Fosdick died in August, 1856, and in June following, John U. Entz was, by this court, appointed trustee in his place, and in October, 1866, he was, by the order of this court, permitted to resign and removed, and John M. Stuart was appointed trustee in his place. John M. Stuart died January 9, 1877, and on the 2d day of November, 1877, the plaintiff, by order of this court, was appointed in his place as such trustee. Testimony was given tending to prove, and the referee found that the defendant has been in the possession and had the control of the premises in question ever since he went in under the-deed of April 4, 1837 ; that since the time when the deed was given by the insurance company to John M. Stuart he had made many and valuable improvements on the property, and in that behalf had expended much of his time and some money by which the value of the farm has been greatly increased ; and that in doing this the defendant has manifested a purpose consistent only with a substantial interest on his part in the property. And more especially was such interest, or supposed interest, indicated by the fact that there did not appear to have been any arrangement for his compensation ; and while the cost of the improvements

exhausted all the income of the property, and probably more, the grantee Stuart advanced nothing to pay any of the expenses, nor does it appear that he gave the property any personal attention, and the same may be said of the trustees prior to the plaintiff; that the relations of the defendant and John M. Stuart had been and were personal and intimate for several years before and at the time of the conveyance by the insurance company to the latter, and that their friendship and confidence were reciprocal appeared by certain correspondence which was put in evidence. Stuart was a member of the firm of Freeland, Hoffman & Co. of New York, to which firm the defendant was indebted as well as to Stuart individually. Upon the trial evidence was given tending to show that in November, 1842, the defendant deposited a package of gold in an express office at Rochester containing an amount of money less than his indebtedness to the firm. Further testimony was given from which it might be inferred that the gold was sent to the firm ; that it had received it and sent the defendant its voucher therefor. It also appeared that the package was opened at the place of business of the firm by Stuart himself. The defendant was allowed, against the plaintiff's objection and exception, to testify that the package was addressed to Stuart individually and not to the firm.

*Edward Harris*, for the appellant.

*J. A. Stull*, for the respondents.

Smith, P. J. :

I agree with my brother Barker in the opinion that it was error to permit the defendant to testify as a witness in his own behalf that the package of gold coin which he sent by express was addressed to John M. Stuart, individually. Stuart was not living at the time of the trial, and from him the plaintiff derived his title to the land, for the recovery of the possession of which the action was brought. The direct tendency of the testimony was to show a paying or sending of money by the defendant to Stuart. Indeed, unless it had that effect, it was wholly immaterial and irrelevant, and for that reason was improperly received. I have read the opinion of my learned brother Bradley with care, but am unable to concur with him in his views on this question. The argument

turns on the construction to be given to the word " personal," as used in ·section 829 of the Code. Does that term apply only to those communications or transactions in which the parties actually meet face to face? To so hold would .be to exclude from the operation of the section all communications and transactions carried on by means of the mail, the telegraph or other like means. In general, a message intrusted to either of those agencies, when it reaches its destination, would seem to be a personal communication between the sender and the receiver. Every case, however, must be determined by its own circumstances. In the present case, the superscription on the package was something more than a direction to the ·express company, it was a communication to the person addressed, advising him that the package and its contents were intended for him. It appears that within the package was a letter written by the defendant. The letter was not produced at the trial. Suppose it had been lost or destroyed (as probably was the case), so that secondary evidence of its contents was admissible, would it have been competent for the defendant to testify to its contents, and to state that it was addressed to Stuart, and that it advised him that the money in the package was sent to him in payment for the land in suit? If not, how does the case supposed differ in principle from the one in hand? A person writes a letter and hands it directly to the person addressed. The letter being lost, is the writer a competent witness to give parol evidence of its contents in a case within section 829 in all other respects? I suppose even those who adhere to the literal rendering of the word "personal" would admit that it would apply to the case last supposed; but what reason is there for a different interpretation in a case where the writer sends the letter to the person addressed, by the mail or any other mere carrier. Does the fact that the parties do not meet make a difference? One man converses with another by telephone. The parties do not meet; they may be miles apart; yet is either of them competent to testify to the conversation in his own behalf against the legal representatives of the other being dead?

The vice of the ruling, as it appears to me, is that it permitted the witness to state a fact which, taken in connection with proof that the package reached its destination, raised the presumption that the money contained in it was paid by the witness to Stuart, indi-

vidually, and not to the firm of which he was a member. So that if Stuart had been living it would have been competent for him, and he would have been required, for his own protection, to testify to any fact within his knowledge that tended to repel such presumption, as, for instance, that the package was not delivered to him, or that it was addressed to the firm and not to himself.

It is sometimes difficult to draw the line in construing the statute referred to. I am not aware that the present case has its parallel in the books. But our Court of Appeals has characterized the statute as " a beneficial one " which " ought not to be limited or narrowed by construction " (*Holcomb* v. *Holcomb*, 95 N. Y., 316, 325); and the same court has said that the spirit and purpose of the statute " is equality, to prevent undue advantage, and that purpose should be kept in view when border questions arise and lines of distinction are to be drawn." ( *Wadsworth* v. *Heermans*, 85 N. Y., 639, 640.) Each of those injunctions seems to lead to the construction above indicated in the present case.

*Pease* v. *Barnett* (30 Hun, 525) was an action on a bond. The defense was that the bond had been altered after its execution by the insertion of a clause binding the separate estate of the defendant's testatrix, a married woman. The case having come before this court on appeal, we held that it was not competent for the plaintiff, the obligor, although not present when the bond was signed, to testify as a witness in his own behalf that he saw the bond in the hands of his attorney after it was drawn and shortly before it was executed, and that it then contained the clause in question. We were of the opinion that although the witness and the deceased did not meet, the execution of the bond was a personal transaction between them, within the meaning of the statute, and that the plaintiff was not at liberty to give testimony in his own behalf tending to show what was the wording of the bond at the time of its execution. In that case, the testimony was merely inferential as to the contents of the bond at the time of execution, since the clause which the witness saw might have been erased before the bond was signed; and the testataix, if living, could not have directly contradicted the plaintiff, but could only have repelled the inference arising from his testimony, by stating that the clause was not in the bond when she signed it.

Without undertaking to lay down a rule that will be applicable to all cases, I think it may be safely said that, in general, where the testimony of the surviving party will tend directly or by proper inference to prove a communication made, or a transaction had, between the witness and the deceased under such circumstances as that it can be seen that the deceased, if living, might give testimony directly contradicting that of the witness, or tending to repel the inference to be drawn therefrom, the testimony is inadmissible, provided the case in all other respects is within the statute.

The present case is within that rule. The testimony thus improperly received touched a vital point in the controversy, and I am not able to say that it had not its legitimate effect in the decision of the case.

For these reasons I vote for a new trial.

BARKER, J.:

I am also of the opinion that the judgment should be reversed for the reason that incompetent evidence was received on the trial bearing on the material questions in issue.

The defendant did not produce any written evidence in the nature of a contract showing that he was the purchaser of the property from Mr. Stuart, or that he had paid him the purchase-price on the parol contract, which he now alleges existed between himself and Mr. Stuart.

To maintain his equitable defense the defendant relied upon certain facts and circumstances proved by him, and from which the referee held that it was a fair and reasonable deduction that Stuart held the title in trust for the defendant, and that he had fully redeemed the same from such trust in the lifetime of Mr. Stuart.

While this may be a just and proper conclusion to be drawn from the history of the case, all of us agree, if any incompetent evidence was given on the trial over the plaintiff's objection and exception, it is good ground for reversing the judgment. Permitting the defendant to prove by his own evidence the conversation between himself and Mrs. Stuart in 1865, being after Mr. Stuart had conveyed the land in trust for the benefit of Mrs. Stuart and others, was obviously erroneous. The interview with Mrs. Stuart was sought by the defendant, and his statements made to her relative to

the property were mere declarations in his own favor, and were in effect assertions that he had paid Mr. Stuart for the farm and that he held the title in trust for him, and Stuart had never paid anything toward the land. These declarations were not made to one interested in the fee of the land, nor was the defendant provoked to make the same by the assertions or conduct of the trustee, but were in fact voluntary utterances made by an interested party in his own behalf.

Mrs. Stuart, as one of the beneficiaries under the trust-deed, could not make an admission which would bind the trustee. As she could not impair the legal estate by grant, it would seem to follow as a legal proposition, admitting of no dispute, that her verbal admission should not be received to support an equitable title in another, which, when enforced, would destroy the title under which the trustee holds. (*Pope* v. *Devereux,* 5 Gray, 409.)

When the plaintiff interposed his objection to this evidence, the referee remarked that he would overrule the same as to Mrs. Stuart, as she was not the party to the record, and no objection was, or could be, made in her behalf, the meaning of the referee's statement is not readily comprehended. The objection was made by the plaintiff on the ground that the defendant Patterson proposed to prove the conversation with Mrs. Stuart in support of his affirmative defense, and the record shows that it was received for that purpose. Therein lies the error.

In my judgment it was error to permit Patterson, as a witness, to testify that the gold sent by express was consigned to Mr. Stuart individually, and not to the house of Freeland, Hoffman & Co., as such evidence related to a transaction between himself and Mr. Stuart. At the time the gold was sent, Patterson was indebted to Stuart for the land, as was admitted on the trial, and he was also then indebted to the house of Freeland, Hoffman & Co., of which Stuart was a member, in a sum greater than the value of the gold. When this proof was offered the defendant Patterson had given evidence from which it might well have been held that the gold was in fact sent by him to the firm to be applied on his indebtedness to them, and that they had received it and sent him vouchers therefor, one of them being in the form of their own note, payable to his order. This was the situation of the case when the defendant

was permitted to testify that the address placed by him on the package of gold was to Stuart individually, and not to the firm. This evidence related to a transaction between the witness and Stuart, and must have been received and acted upon by the referee for the purpose of determining the disputed question as to the person to whom the gold was shipped. It was direct evidence in its character that it was not paid to the firm, and it was also equally positive evidence that it was paid over to Stuart individually on the land contract. What is this, in the name of common sense, but a transaction between Patterson alive and Stuart dead, relative to the subject matter of the suit? If Stuart were alive he could speak on the same subject, and might dispute the defendant's version of the transaction. Both Patterson and Stuart were actors in that transaction, if in truth it be as Patterson now claims and testifies it was in fact. But it is said the address served as mere instructions by Patterson, the shipper, to the carrier of the package, and was intended for no other purpose. If this view be taken of the purpose and object of the address, and it is to be regarded as nothing more, then why was the fact proved? This argument demonstrates that the evidence was immaterial, and for that reason it was erroneous to receive it.

When it was established by the other evidence in the case that Stuart did receive the package at the counting-house of the firm, and there opened the same, it was still left uncertain in what capacity he received it, whether for the firm to apply on their account against Patterson, or for himself individually, to be applied upon the land contract. It was for the purpose of enabling the referee to dispose of this contention that the evidence was received. It related to and characterized Stuart's act in receiving and opening the package, as it tended to prove that Patterson paid the gold to Stuart on the land contract, not by proving an act done by the carrier or some other person, but by proving a transaction in which they were both necessarily actors. The address, in view of the use now sought to be made by it, was in the nature of instructions on the part of the consignor to the consignee, which might with propriety be written on the package as well as sent separately by letter, as is customary in such transactions between merchants. So far as the address served as instructions to the carrier, it long ago served

its purpose, and on this trial the form of the address was proved and received as competent evidence on an altogether different issue and between different parties. In my opinion the defendant Patterson was disqualified as a witness, by section 829, to prove the fact for which he contends, as Stuart is now dead and the plaintiff claims title under him.

The case of *Koehler* v. *Adler* (91 N. Y., 657), is similar in its material facts to the case now here, and is an authority, I think, in support of the views I have expressed. (See, also, *Price* v. *Price,* 33 Hun, 73.) "The words of exclusion are as comprehensive as language can express. Transactions and communications embrace every variety of affairs which can form the subject of negotiation, interviews or actions between two persons, and include every method by which one person can derive impressions or information from the conduct, condition or language of another." (*Holcomb* v. *Holcomb*, 95 N. Y., 316.)

BRADLEY, J. (dissenting):

After stating the facts of the case substantially as above set forth, Judge BRADLEY proceeded:

The death of John M. Stuart has deprived the case of the direct testimony which defendant, as well as he, might otherwise have given, and some material facts requisite to the defense are found only in the inferences derived from circumstances, and in the circumstances themselves and their interpretation. The important facts are whether the deed made by the insurance company was taken really for the benefit of the defendant, and under an agreement between him and Stuart, to the effect that the defendant should retain control of the property, pay the amount required to reimburse Stuart, and eventually have a conveyance made by the latter to him of the farm, and whether the defendant did in fact pay him the amount so required to entitle him to the property.

The burden of showing that situation was on the defendant to divest the apparent title of the plaintiff derived from the deeds and the consequent right of possession which they seemed to afford. While the intervention of the period of upwards of forty years has removed some of the guides and dimmed the way of inquiry, circumstances have not within that time wholly failed to furnish some aid in reaching

a conclusion in respect to the facts by which the rights of the parties are to be ascertained. The referee has found that the deed was taken by John M. Stuart from the Hudson Fire Insurance Company pursuant to an arrangement with the defendant, and for the benefit of the latter, and that by it the right was given to the defendant to repay Stuart the amount so by him secured to be paid, and retain and have the premises and the title to them. And that pursuant to such agreement the defendant paid the requisite amount to Stuart, and the latter received it and thereby the defendant became and was the owner of the farm in question having the equitable title to it. The evidence, as a whole, seems to be sufficient to support his conclusions of fact in those respects, and we hold that it is. And without here fully relating the evidence and the deductions from it which lead to that result, reference is made to the well considered and somewhat elaborate opinion of the referee on those questions of fact, which is adopted and approved.

There are some circumstances appearing which in no manner cast any unfavorable reflections on the conduct or purpose of Mr. Stuart, and which indicate a reason why the defendant may not have desired a conveyance from him for some years after the alleged transaction which vested in the latter the right and equitable title to the premises, which takes from the omission of the defendant to seek and obtain a deed, some of its force as evidence against his claim.

The remaining questions arise on the exceptions taken by the plaintiff on and after the trial. The defendant testified that on the 16th or 17th day of November, 1842, he deposited a package of gold in the express office at Rochester; that it was addressed in writing and he had not seen it since (and it subsequently appeared in the testimony that it consisted of 217 sovereigns). He was then asked by his counsel, "to whom was it addressed?" The plaintiff's counsel objected on the grounds : 1. That it being in writing must be produced. 2. Unless it was addressed to John M. Stuart it is immaterial, and if it was so addressed it is incompetent as it was a personal transaction with him, deceased. The objection was overruled and exception taken. The answer followed, that "it was addressed to John M. Stuart, of Freeland, Hoffman & Co., or in care of Freeland, Hoffman & Co., for John M. Stuart." It

having then appeared that Stuart was dead at the time of the trial, it is insisted on the part of the plaintiff that the question called for a personal transaction between the defendant and John M. Stuart, and the evidence was therefore incompetent under Code Civil Procedure, § 829.

The question is not entirely free from difficulty. To say that the witness sent to Stuart the package would seem to import a transaction between them. Here he described one delivered to the express company, and that description included the address written upon it. The fact of the delivery to the company, and the description of that delivered, was competent; and any direction given to the agents or servants of the express company at the time does not seem to come within the inhibition of the statute, as it can be treated only as a communication to it. The question here is whether the address was a communication to, or related to, a personal transaction with Stuart by the witness, or was merely a direction to the express company. It was the latter; but was it anything more? So far as appears the package contained no communication to Stuart, or any person, and may be distinguished to that extent from a letter having a superscribed address. The delivery of the package to Stuart would consummate or produce a transaction between him and the defendant. But testimony which might, in effect, as evidence, bear upon a fact involved in a transaction with another might be competent, although the witness would not be permitted to testify concerning a personal transaction with such person. (*Pinney* v. *Orth*, 88 N. Y., 447, 451.) The delivery of a parcel to one with direction to deliver it to another person, might, if the direction be afterwards executed, operate in effect as a transaction between the two by means of the intermediate act of the third. Yet it would hardly seem that such direction would be treated as a personal transaction between those two persons. After it was delivered to the express company the defendant exercised no control over the parcel. The company had the custody of it with his directions accompanying it in respect to the destination the company should give to it. The address had no other purpose. The effect was the same and no different from what it would have been if the direction had been orally given.

The personal transaction with Stuart was the delivery to him,

which, if had, was by the agent of the company. Nor was the address a personal communication by the defendant to Stuart. It conveyed no information as distinguished from the fact of delivery by the company, nor is it important whether it was written by the defendant or by the company pursuant to his directions to deliver it. It was matter of identity and of guide to the company as carrier. (*Hill* v. *Heermans*, 22 Hun, 455 ; affirmed *sub nom. Wadsworth* v. *Heermans*, 85 N. Y., 639.)

The evidence offered does not come within the statute, and the plaintiff's exception is not supported by *Pease* v. *Barnett* (30 Hun, 525) : *Wilson* v. *Reynolds* (31 id., 46); *Koehler* v. *Alder* (91 N. Y., 657); *Holcomb* v. *Holcomb* (95 id., 316).

It subsequently appeared by other evidence on the trial that the gold was shortly afterwards in the possession of Stuart at the store of the firm, and that by letter in the handwriting of Stuart, of date, New York, November 18, 1842, addressed to the defendant and subscribed " F., H. & Co.," it appeared that 217 sovereigns were received. There was some importance given upon the trial to the fact whether the package went pursuant to defendant's direction to the firm, or to Stuart individually, and in that view the address upon it was deemed material. It was desirable to the defense that it went to him individually, because it was claimed on the part of the defendant that $750 of that gold coin was received by Stuart as payment of that amount of the purchase-price of the premises, and the referee so found.

The testimony of one Bowman, then clerk of the firm, was to the effect that he was present at the store in New York in the latter part of November, 1842, when a package of money was received there by Stuart, who opened it, and on being asked by the witness where it came from, answered that " it came from Patterson to pay for his farm," and the witness adds that it was in the neighborhood of $800 in gold.

The tendency of this evidence and some other circumstances, is to show that the money was received by Stuart, and that $750 of it was so applied by him, and without the aid of the testimony given by the defendant of the address on the package, was sufficient to support the conclusion of the referee in respect to such application of that amount of it.

In September, 1868, the defendant received a letter from Mrs. Stuart, by the terms of which she treated him as having had the agency of the farm and suggested that her son was ready to take possession.

After the receipt of the letter the defendant had an interview with her; and, when asked to state the conversation, the plaintiff objected that it was inadmissible and incompetent, the objection was overruled "as to her," and exception taken. Mrs. Stuart was not a party plaintiff on the record, but she was a *cestui que trust* in the deeds referred to, and by them was given the income during her life of the property conveyed, in which was included this farm. She had written him the letter assuming that the title had passed by the deeds to the trustee.

The defendant met her, and in reply to the letter made to her an oral statement of his claim in respect to the premises. Her apparent relation to the farm or the income of it justified her letter and permitted, if it did not require him to make the explanation and give the information he did to her. And the reception of that statement in evidence was a qualified one. It was received as to her only.

The statement so made by him furnished no evidence in the action of the facts stated, but was a mere assertion of a claim when his right was challenged by a person having an interest in doing so, and an apparent interest in the use and proceeds of the property. It may be treated as a statement in reply to assertion of right adverse to that, which he claimed to the premises, and further than that it had no importance or materiality for any purpose. If it be assumed that this evidence was incompetent because Mrs. Stuart was not a party to the record, it cannot be assumed that any effect was given to it by the referee as against the plaintiff, but the contrary, as it was not received as against him, and to that extent the situation is different from what it would have been if the trial was before a jury. And even then the direction given them by the court to disregard it would be effectual to cure the error, if the other evidence is sufficient to support the verdict. (*Mandeville* v. *Guernsey*, 51 Barb., 99; *Stone* v. *Frost*, 6 Lansing, 440.)

The review of trials before referees brings to the consideration the case upon the evidence as a whole as distinguished from a review on exceptions only. And technical errors which it can

fairly be seen did not prejudice the party in the result will not be made grounds for granting new trial, nor unless there are probable grounds to believe that injustice has been occasioned by them. (*Crary* v. *Sprague*, 12 Wend., 41.)

The ground of objection is general, and although such objection may be sufficient where it could not be obviated if specifically made, yet that rule is not universal. (*Levin* v. *Russell*, 42 N. Y., 251, 255, 256 ; *Daly* v. *Byrne*, 77 id., 183, 187.) It may be and it would seem that for the time being the referee had the impression that Mrs. Stuart was a party, and when he overruled the objection as to her, if the objection that she was not had been specified, the question may have been withdrawn or the objection sustained. The plaintiff was fairly required, under the circumstances, to suggest the reason specifically if that was the ground he had in view. (*Ward* v. *Kilpatrick*, 85 N. Y., 413, 417.) The objection and exception as taken do not support error nor justify its predication upon them.

The testimony given by the defendant of the arrangement between him and the insurance company, giving him the opportunity to purchase or cause to be conveyed the premises to such other person as he might name for a specified consideration, was properly received in view of the evidence which followed relating to the part he took in procuring the deed to Stuart, and to the purpose for and the arrangement under which it was taken, out of which arose the defendant's alleged right to reimburse him and have the property.

The exceptions to the conclusions of fact and law of the referee are not, nor is any one of them well taken. And the propositions he refused to find, so far as material, are inconsistent with his findings as made. The exceptions to those refusals do not, nor do any others taken on the trial, require further consideration.

The judgment should be affirmed.

HAIGHT, J., not sitting.

Judgment reversed and a new trial ordered before another referee, with costs to abide the event.