Mr. Justice Hagner,
after making the foregoing statement of the case, delivered the opinion of the Court:
The proof discloses' a very remarkable state of facts. Wight lived five years and five months after the execution of the deed of trust; and yet there is nothing to show that he ever claimed any ownership over the notes or the deed, or demanded payment of the sum apparently due; notwithstanding that during this time he was considerably embarrassed in his affairs, and was a frequent borrower of money, among others from Andrews; from a cook at a hotel, and from Government clerks and ladies. The only evidence of his ownership of the notes is that afforded by their recital, and by his possession of the papers. '
Several witnesses were examined in behalf of the complainant, among others Andrews himself. Before considering the testimony, it is proper to dispose of a preliminary objection to the evidence of the complainant.
It is insisted upon the part of Fendall that Andrews is not a competent witness under Section 858 of the Revised *315 Statutes of the United States, which declares: “In the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action, because he is a party to or interested in the issue tried: Provided, that in actions by or against executors, administrators or guardians, in which judgment may be rendered against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward, unless called to testify thereto by the opposite party or required to testify by the court.”
Does the testimony of Andrews come within this inhibition?
Under this section the disqualification of the witness is limited to testimony against the other party “ as to any transaction with or statement by' the testator, or intestate,” etc.
But so far as the statement of Andrews can be said to refer in any way' to transactions with Wight, it is confined to a denial that any such transaction between them, ever took place. He testified that he never delivered the papers to Wight, but stated nothing whatever as to any conversation with the deceased on the subject of the deed and notes.
The New York Code of Civil Procedure, Sec. 829 (which goes much further than our statute), prohibits the'survivor from testifying that any particular communication or transaction did or did not take place between him and the deceased. Rapalje, on the Law' of Witnesses, page 213, says: “So long as the survivor refrains from testifying as to anything that passed or did not pass personally between himself and the deceased it is no valid objection to his testimony that the facts which he states bear upon the issue whether or not the personal transaction in question took place, or upon the truth of the testimony by which such transaction is sought to be proved against him.”
This was the ruling in Wadsworth vs. Heermans, 85 N. Y., 639, which was an action of replevin brought by Hill, the plaintiff’s intestate, to recover negotiable bonds which *316 he'claimed to have deposited with (Fellows) the deceased, for safekeeping merely, but which were found in the deceased’s safe with his name inserted in the blanks, and were claimed by the defendant as assignee of the deceased. Hill was asked whether Fellows’ name was on the bonds when he (Hill) put them in the safe. This question was objected to as involving a personal transaction with the deceased, but the Court of Appeals affirmed the decision of the trial court overruling the objection, on the ground that the question involved no personal transaction, but merely respected the condition of the bonds at a particular time.
So in Pinney vs. Orth, 88 N. Y., 447, under the same statute, it was held that a party was not precluded from testifying to extraneous facts which tended to show that a witness who had testified to a conversation between that party and the deceased, must have testified falsely because the witness was not present at the interview described.
It is well settled that the New York statute prohibiting a party to a suit by or against executors or administrators from testifying against the other, or to transactions with the deceased, does not extend to transactions with the agents of the deceased. Pratt vs. Elkins, 80 N. Y., 198. The statement of Andrews, therefore, as to his interview with Donn, when the papers were deposited in Wight’s safe, would clearly have been admitted, in that State; and the United States statute is not more stringent than that of New York in this particular. The Supreme Court in the. recent case of Goodman vs. Fox, 129 U. S., 631, limited the application of the statute with strictness to cases covered by the proviso; and such have been the rulings of this court.
For these reasons, we think, the evidence of Andrews was properly admissible.
The testimony of the witnesses on both sides is substantially as follows :
'■ Andrews, the complainant, testified in his own behalf that he has been a clerk in the United States Treasury De *317 partment continuously since March, 1864; that he first became acquainted with Wight in 1866; that he bought some furniture from him in 1874; that Wight accommodated him in the matter of the furniture and' let him pay for it as he could; that the four notes were originally secured by a chattel deed of trust, bearing the same date as the notes, on the furniture in his house; that the furniture covered by the chattel trust was afterward sold at auction, but not under the power contained in the deed, and the proceeds turned over by the auctioneer to Wight, who gave all except about $100 to him (Andrews); that thereupon, in order to make the security good as to the eighteen months’ note, which he had negotiated with one Hobbs in April, 1877, he (Andrews), took the remaining three notes and a duplicate of the one transferred to Hobbs to the office of Mr. Carusi, who had prepared the chattel trust, and requested that gentleman to prepare a deed of trust upon his (Andrews) real estate securing the same notes; that as soon as Carusi had prepared the deed of trust upon the realty he signed and acknowledged the same and took it and the notes away with him and went across the street to Wight’s place of business, intending to put them in Wight’s safe; that he called the attention of Donn, Wight’s clerk and salesman, to the papers, telling him he wanted him to particularly notice them because they were his private papers, so that in case of Wight’s death they could be returned to him; that thereupon he (Andrews) placed the papers in an envelope, sealed it, wrote his name upon it, and handed the package to Donn to put in the safe.
Mr. Donn, called for the complainant, testified that he was in Wight’s employ for twenty-seven years. He recollected the circumstance of Andrews asking him to put some papers in Wight’s safe; he saw the papers, recollects that Andrews put them in an envelope, sealed it, and wrote his name upon it, and that he (Donn) put them in the safe. He was very busy with a customer when Andrews called, *318 and does not recollect whether he made any explanation about the papers, but does remember Andrews saying he had just come from Mr. Carusi’s office. Wight had told the witness that Andrews was- at liberty to use the safe for .the deposit of his papers whenever he chose to do so.
The complainant further testified that a short time after Mr. Fendall was appointed administrator of Wight’s estate he received a circular letter from him, stating he was indebted to Wight’s estate in about $2,500, but not mentioning the notes in question, and. inviting him to call and see -about the matter; that as a result of this letter he called at Mr. Fendall’s office, but did not see him, but did see Mr. Coughlan, his associate; that he had several interviews with Coughlan concerning the matter; that about the third interview, when the deed of trust and notes in question were produced by Coughlan, he at once claimed them as his property, and told Coughlan the circumstances under which they were put in Wight’s safe, but Coughlan said he could not give them up and that he (Andrews) would have to see Mr. Fendall about the matter.
Mr. Fendall, the administrator, testified, on his own offer, that he had a conversation with Andrews in which the latter claimed the notes had been settled by other dealings between himself and Wight; but not being able to come to that conclusion he turned the whole matter over to Coughlan, his associate.
Coughlan, called for the administrator, stated that he did not remember whether Andrews saw Fendall or not, but does recollect that when he showed Andrews the deed of trust' and notes in question, the latter claimed them as his property, and made substantially the same statement about placing them in Wight’s safe that he he gave in his testimony in this cause.
Upon the whole testimony we entertain no doubt the decree below should be affirmed. Apart from the direct testimony, the circumstances surrounding this transaction *319 strongly support the contention of the complainant. Wight died in straightened circumstances, and his estate was absolutely insolvent. During all the intervening five years these papers were in his safe. It is difficult to understand why he did not use them if he had the right to do so. He certainly needed $4,000 very badly. But so far from claiming the right to use all the notes, out of the proceeds of the note that was discounted he borrowed $500 from Andrews, which he testifies he loaned Wight only out of good fellowship. After this, the three other notes, amounting to $3,000, remained in his possession unused, although there was no reason he should not have applied them to relieve his needs, if he had the right to do so. We think this conduct on his part was utterly irreconcilable with the idea that he was the owner of the notes.
The decree required the administrator to pay the costs de bonis testatoris. We see no reason why this should be so. Andrews certainly was guilty of laches iii leaving his affairs in such confusion, and it was his own lack of business method that caused the expenses of this suit; and we adjudge that he should pay the costs. With that exception the decree below is affirmed.