DIANA G. EMERY *versus* LEVI G. VINALL.

Where the undertaking of a principal to repay to a surety the amount paid by him for the principal, by a levy upon land of the surety, is but one implied by law, it seems that the surety cannot recover of the principal the expenses of the levy.

In case of the avoidance of a levy for informality, the creditor may, in an action of debt, recover judgment against the debtor for the amount of the debt levied for *and interest*.

In the trial of an action, every point of law intended to be made, should be presented to the presiding Judge explicitly, or he cannot be expected to give an opinion upon it; and no exceptions will lie in reference to any point, whereupon no opinion is given, or refused to be given, and no ruling is made by the Judge.

It is not enough for a party to say, that he excepts to the introduction of a witness; he should explain why and wherefore he so objects.

A party cannot prove by a witness the contents of a deed, until he has taken proper measures to have the deed produced, or shown some sufficient reason for not having produced it.

In the absence of evidence or testimony to the contrary, a note is presumed to have been made at the time it bears date.

A conveyance of land as an absolute gift is void as to prior creditors of the grantor. An instruction to the jury, therefore, that if the conveyance was made by the grantor for the purpose of preventing his creditors from availing themselves of it, and he intended and expected to receive a benefit therefrom, and the grantee was aiding him, that the demandant, being a prior creditor, should recover, is erroneous, as it requires of the demandant proof of a fact, which could not legally be required in such case.

As the opinion of the Court on some of the points was based on the particular language of the exceptions, a copy will be given, instead of the concise abstract usually made by the Reporter.

" Writ of entry to recover 67 acres of land in Dixmont in this county, and for the mesne profits. Plea the general issue. Writ dated Sept. 6, 1842.

" The plaintiff read a judgment of the District Court, Penobscot county, May Term, 1841, in favor of the plaintiff versus Waldo P. Vinall and Lot Vinall, for $431, debt, and $23,74, costs of suit. He then read the original writ, dated May 7, 1840, and also the note on which the judgment was founded. The note was dated March 17, 1837, and was for $343,74,

payable to Temple Emery, the plaintiff's *intestate*, in six months from date with interest, signed by said Waldo as principal and said Lot as surety.

"Another note, similar to the above in every particular, was held by the plaintiff and declared for in the writ, but was withdrawn and judgment rendered for one only. Execution on said judgment, dated June 19, 1841, with the return of an extent, by virtue of said execution, on the demanded premises, as the property of Lot Vinall, July 7, 1841. The execution was duly recorded within three months and returned to the clerk's office.

"The defendant, then read a deed from said Lot Vinall to him, dated March 22, 1837, conveying 25 acres of the demanded premises, consideration $400.

"Deed from Thomas Odell to defendant, March 18, 1837, consideration $200, conveying 50 acres more or less. This and the former deed covered the demanded premises, and something more. The defendant, it was proved, was in March, 1837, a minor, and less than 18 years old. He was son of said Lot, and said Odell was his grandfather. The defendant admitted, that the deeds to him were purely voluntary. Odell died about three years ago, and Lot Vinall about two years ago.

"Rowland Tyler, called by the plaintiff, testified that he formerly lived in Dixmont, and knew Lot Vinall and Thomas Odell; that Odell lived with Vinall; that in June, 1829, Vinall came to him, or sent to him, to go to his house to take the acknowledgment of a deed. In the evening he went down and found Odell very sick; he was not expected to live but a short time. Mr. Vinall brought out a deed from his desk, signed by Mr. Odell; the deed was handed to witness; and he asked Odell, if he acknowledged it, and he said he did. Witness then certified the acknowledgment, and handed it back to Vinall. The witness did not read the deed. The parties told him at the time what it contained. The plaintiff then asked the witness to state, what said Odell and Vinall said the deed contained at the time it was acknowledged. This ques-

tion was objected to by defendant and excluded. The witness then stated, that Lot lived on the farm (of which the demanded premises are a part) and carried it on, and as he always considered, claiming it as his own ; that, before he took the acknowledgment of the deed, Vinall told him, he had agreed to support his father-in-law (Mr. Odell) and his wife during life, and Odell had given him a deed of his farm. Odell was present and said nothing.

" Waldo P. Vinall, called by defendant, (objected to by plaintiff, but admitted) testified, that he was the brother of defendant, recollects Tyler's coming to his father's and transacting business as a magistrate, about 15 years ago ; remembers an instrument was placed in Mr. Tyler's hands, and that he asked his grandfather Odell, if he acknowledged it to be his free act, and that his grandfather assented to it; that his grandfather told his step-grandmother to put it in the till of his chest in which he kept his papers; that he did not see his father (Lot Vinall) have it in his hands, but it may have been that he did have it. Mr. Tyler's remembrance may be better than that of witness ; the grandmother then put it in the chest. Saw nothing more. He then testified, subject to objection, that in the spring of 1837, he entered into a copartnership with Hosea B. Emery, brother of Temple Emery, for the purpose of trading at Monroe ; that said H. B. Emery and one Scribner had been in trade there and failed. Mr. Kendrick, one of the Boston creditors, came down, and after an examination agreed to discharge the debts against Emery & Scribner on their giving security for one half of the amount due ; that H. B. Emery proposed to witness to go in with him, take the stock of Emery & Scribner, and give security for the one half ; that he examined into the business and concluded to go into trade with said Emery, and give security as the Boston creditors proposed ; that he and said H. B. Emery went together to said Temple, to see if he would be surety for them to the Boston creditors. Temple Emery came to Monroe and went with Emery and Vinall to Belfast, where the security was

given to the creditors by said Temple. Notes were given by Emery and Vinall, signed by Temple Emery, as surety, dated March 21, 1837. S. Heath, Esq. was attorney for said creditors. A bill of sale of the goods at Monroe was made to said Temple. We returned to Monroe. The goods were delivered to Temple Emery, and he put them in our possession; every thing was left in the store; he told us to sell the goods and collect the demands and apply the proceeds, where he was owing for us in Boston. We proceeded to make payments as fast as we could; we paid one note to Kendrick & Lamb, in 1837, for $461,95; we paid to the Boston creditors together. After the transaction at Belfast, Temple Emery said to me that he wanted security. I proposed to get my father to sign. He said he was secured for half by Hosea by a sawmill, built by Hosea on Temple's land; he agreed to take my father; had two notes written; Hiram Emery wrote them; I signed them in Hiram's presence; they were both of the same amount; I took the notes and went to my father's, in Dixmont, and he signed the notes. This was some weeks after the transaction at Belfast. My father had two horses, five or six cows, a good wagon, and a chaise. The said Waldo then stated as follows, (the plaintiff objecting.) The summer that Temple died, (1838), he came to Monroe, and stated that he wanted further security. I had at Emery's mills 32,575 hard wood staves, a few hoop poles and barrels; Emery said, if I would deliver them to him, and have them applied on the notes he had signed as surety for me and Hosea, he would give up the notes he held against me and my father. I agreed to it and made the delivery, and sold the lumber in Boston and applied the proceeds on said notes which Temple signed for us.

"Temple died before I got returns; Temple never received any thing from the goods and demands. A. L. Kelley had a lien on the lumber I turned out to Temple. I settled with Kelley and paid him about $50; my father furnished the means to pay him; he turned out a note against my half-brother, L. Vinall, jr., which Mr. Kelley accepted in payment.

"The aforesaid deeds, notes, judgments, executions and returns may be referred to by either party.

" TENNEY J. presiding at the trial, instructed the jury, that to entitle the demandant to a verdict for the land, which the defendant claimed by virtue of the deed from Odell to him, the demandant must satisfy them, that a deed of the whole or a part of this land was made, executed, and delivered by Odell to Lot Vinall; that the possession of a deed by the grantee, unexplained, is sufficient evidence of a delivery, and often the only evidence of a delivery; but if it appeared that the grantee had possession of the deed for another purpose, than to receive conveyance of the land, the possession would not constitute a delivery; and, if they found a deed was made, executed and delivered by Odell to said Lot Vinall, they must also be satisfied that it described the whole or a part of the land; and they would look at all the evidence in the case touching this question.

" As it was admitted that the other portion of the land, claimed by the demandant, was conveyed by Lot Vinall to the defendant without consideration, and as the deed was dated subsequent to the date of the note which is the baisis of the demandant's claim, the demandant would be entitled to recover for this portion, unless the defendant should satisfy them, that the said Lot Vinall did not sign said note before the execution of the deed from him to the defendant; and if they were satisfied from the evidence, that although Lot Vinall did not sign said note till after the execution of the deed, yet if he contemplated signing said note when he so executed it, or if he conveyed the land to the defendant for the purpose of preventing his creditors from availing themselves thereof, and he intended and expected to receive a benefit from the same, and the defendant was aiding him in this intention, the demandant would be entitled to their verdict."

The jury returned a verdict for the defendant, and the counsel for the demandant filed exceptions to the rulings and instructions of the presiding Judge, and they were allowed and signed.

*Washburn*, in his opening argument for the demandant, made these points: —

1. W. P. Vinall was interested, and therefore incompetent as a witness. Rev. St. c. 94, § 23 ; 14 Mass. R. 143 ; 8 Pick. 547 ; 10 Pick. 204 ; 3 Metc. 81 ; 8 Shepl. 494.

2. The witness, Tyler, should have been permitted to answer the question proposed, and to have stated the contents of the deed. 1 Stark. Ev. 436 ; 1 Greenl. Ev. 94, (note 2) and 616 ; 1 Stark. Ev. 36, 57, 440 ; 1 Greenl. Ev. 107, 109, 223.

3. The testimony of W. P. Vinall, concerning the notes, was improperly admitted.

4. It was contended by the plaintiff, at the trial, that the deed from Lot Vinall to the defendant was fraudulent and void. The instructions of the Judge on this subject were erroneous.

5. If this was a gift, if the intention of the grantor was fraudulent, and he designed to contract debts and not to pay them, the knowledge of this intention by the voluntary grantee is not necessary to avoid the deed. *Howe* v. *Ward*, 4 Greenl. 195.

6. The intestate was a creditor of the grantor of the defendant, prior to the voluntary deed under which he claims. The grantor admitted in writing, that the notes were prior to the deed, and he and the defendant claiming under him are bound by it. The instructions respecting this were erroneous.

7. A voluntary conveyance is not good against a subsequent creditor without notice. Until the deed is recorded, or notice given in some other way, it cannot be set up against a creditor of the grantor. 9 Mass. R. 390 ; 11 Mass. R. 421 ; *Howe* v. *Ward*, 4 Greenl. 206 ; 1 Dane, 668.

*Kelley* argued for the tenant.

1. The admission of W. P. Vinall is but the common case of a witness whose interest is balanced.

2. The testimony of Tyler was rightly rejected. It was an attempt to prove by parol the existence and contents of a deed?

without any proof of its loss or diligence to discover it; and that too, not by one who had read the deed, but by what others had said the deed contained.

3. The testimony respecting the time when the notes were actually signed, was admissible to repel any presumption of fraud.

4. If either party has a right to complain of the instructions of the Judge on this subject, it is the tenant. If the whole is read, and not a single sentence alone, it is clearly right.

5. This objection is included in the fourth. The demandant has no ground of complaint as to the whole charge on this point.

6. The facts in the case are such, that this objection is merely fanciful.

7. Voluntary conveyances may not be good against subsequent creditors, when the grantor did it with the view to contract debts afterwards and not pay them, and the grantee at the time knew of such intention, and took the deed to aid him in it. The jury, in this case, have found, that the *whole transaction was in good faith*. But to make the deed void in such case the grantee as well as the grantor must be a party to the *designed fraud*.

*Kent*, for the demandant, replied.

The opinion of the Court was drawn up by

WHITMAN C. J. — The first exception taken to the ruling of the Court, is to the admission of Waldo P. Vinall as a witness. It is urged, that he was incompetent, by reason of interest in the event of the suit. It appears that he was a joint debtor with Lot Vinall in the judgment recovered by the plaintiff, to satisfy which a levy was made upon the demanded premises, as the property of said Lot Vinall; and on which the plaintiff's claim of title rests; and that Lot was but a surety for the witness, on the note on which that judgment was rendered. It is contended, that, coming as the witness does, under such circumstances, to disturb the levy, he has an interest in so doing, greater than he will have by avoiding the levy, (and thereby rendering himself liable for the original debt,)

equal to the amount of the costs of levy, for which it is contended, if the levy should be upheld, he will be responsible to Lot as his surety.   But we are not satisfied that the witness would be so responsible.   The express undertaking, on the part of Lot, was, that he would pay the debt, if the witness did not; and there does not appear to have been any thing more than an implied undertaking, on the part of the witness, to repay him the amount, in case he should have paid it.   Lot does not appear to have had any express stipulation from the witness to indemnify him from all harm, in case he should be compelled to pay the note by a levy upon his real estate, without which, it is far from being clear that the witness would be answerable for expenses so incurred.

But it is further contended, that, by the Rev. Stat. ch. 94, § 23, a creditor, whose levy has been defeated, can have execution renewed, only, for the original judgment, without interest ; and, in argument, it is supposed, that the levy was for the amount of the original judgment, and interest thereon to the time of the levy, for which the witness would be answerable, if the levy should be sustained ; thus showing, that the balance of interest on his part would be in defeating it.   But it is not stated in the bill of exceptions, that the levy was for the amount of the original judgment, with interest thereon to the time of the levy.   The statement is, that the execution was levied on the demanded premises.   Whether fully satisfied or not does not appear.   It is said, in the bill of exceptions, that the execution and levy may *be referred to by either party* ; by which it might perhaps have been made to appear, that it was fully satisfied, including interest to the time of the levy ; but no such reference of either party has been made in our presence ; and from a bill of exceptions we are not authorized to infer any fact not embraced in it ; and besides, in case of the avoidance of the levy, the creditor in an action of debt may recover of the debtor, judgment for the whole amount of the debt levied for, and interest.   This exception, therefore, cannot be considered as well taken.

It is next contended, that the witness was incompetent, be-

cause he may be answerable to Lot's estate for what may be recovered by the plaintiff for mesne profits, it being supposed by the defendant, that the amount so recovered will be recoverable of that estate by the defendant, and afterwards of the witness by the administrator of that estate. But it is not stated in the bill of exceptions, that the defendant holds under Lot Vinall, by deed of warranty, and we have not been referred to the deed itself to see whether it was so, by either of the parties, as provided for in the bill of exceptions ; and of course cannot consider this exception as properly presented for our consideration. Indeed, we might well consider the three grounds of exception to the admissibility of the witness as improperly presented in argument, because it does not appear that they were ever brought distinctly to the notice of the Judge at the trial. Every point intended to be made should be presented to the Judge at the trial explicitly. If that be not done, he cannot be expected to give any opinion upon it ; and, if he should not, no exceptions should lie in reference to any such point. It is not enough for a party to say he excepts to the introduction of a witness ; he should explain why and wherefore he so objects.

It is next insisted that Tyler, a witness introduced by the plaintiff, should have been permitted to state what Lot and Odell, another grantor of the defendant, stated to be the contents of a deed from the latter to the former, of which he, Tyler, took the acknowledgment, in June, 1839. But it does not appear that the plaintiff had ever taken any measures to have that deed produced, or shown any reason for not having produced it ; till which no evidence *aliunde* of its contents could be admissible. The ruling of the Court, therefore, was, in this particular, unexceptionable.

As to the testimony of W. P. Vinall, relative to what took place between him and Temple Emery, in the summer of 1838, concerning the giving of certain notes, we are unable to gather from the exceptions, as drawn up, any ground upon which it was properly admissible. It does not appear, that the note, on which judgment was recovered, was either of those

notes; but the contrary seems inferable, as that note bore date anterior to that transaction; and there would seem to have been no reason why any notes, growing out of it, should have been antedated, so as to correspond with the note sued. And, moreover, the witness, who was one of the signers of those notes, and who must have been conusant of any such identity, if any existed, does not appear to have testified to it. Besides, this witness and Lot had both voluntarily suffered the judgment in question to be rendered against them. If there was any ground upon which it could have been pretended, that the note, upon which it was founded, had been paid, it would seem that they could not have failed to have interposed that defence. With an ill grace, therefore, could this witness have stated, that the judgment was recovered upon a note not due. But his testimony does not seem to have had any such tendency; and was, therefore, so far as can be gathered from the bill of exceptions, wholly irrelevant; and if the Court had finally so informed the jury, or if it could be seen that it could have had no effect upon the minds of the jury, it might not have formed any legitimate ground of exception, as the plaintiff, in the language of our statute, in reference to the allowing of exceptions, might not have been *aggrieved* by it. But it may not be important that we should form or express any definite opinion upon this matter, there being other grounds upon which we are satisfied that a new trial must be granted.

There would seem to be no question, but that Lot Vinall owned twenty-five acres of the demanded premises, at the time of the date of the note, on which judgment was recovered; and the note bears date before Lot conveyed the same twenty-five acres to the defendant; and it was admitted at the trial, that that conveyance was purely voluntary, and without any valuable consideration therefor; and there does not seem to be any thing stated in the bill of exceptions, that should have been considered as having a tendency to show, that the note on which the judgment was rendered had been antedated; especially as W. T. Vinall, the principal in the note, states nothing of the kind in his testimony. The jury, nevertheless, were

given to understand, that they might find it to have been made after the conveyance of the twenty-five acres to the defendant. This we are inclined to consider as incorrect. In the absence of testimony, or evidence to the contrary, the note should have been presumed to have been made at the time it bears date.

Again, the jury were instructed, in reference to the twenty-five acre piece, that, if Lot conveyed it to the defendant for the purpose of preventing his creditors from availing themselves of it, *and intended and expected to receive a benefit therefrom, and the defendant was aiding him,* the demandant should recover. It seems to be unquestionable that the conveyance, referred to in this branch of the instructions, was an absolute gift to the defendant, then a minor son of the grantor, and there is no evidence tending to show that there was any prospect or hope of benefit remaining to him therefrom. It was like numerous other gratuitous gifts, mentioned in the books of reports, in which no benefit was expected to accrue, or intended thereafter to be derived therefrom, by the grantor or donor, which have been adjudged void, when found to be interfering with the rights of creditors. This instruction, therefore, went too far and required of the plaintiff proof of a fact, which could not legally be required in such a case.

*Exceptions sustained.*
*New trial granted.*