SARAH L. HUGHES, Appellant, v. MARION E. SILVERS et al., Appellees.

**DEEDS: Fraud—Who Must Establish or Negative—Parent and Child**
1 **—Confidential Relation.**  Ordinarily he who alleges must prove. An exception arises (a) where a parent deals to his advantage with a dependent child, and (b) where the child deals to his advantage with a dependent parent.  Dependence marks the exception.  In the first case the parent and in the latter the child must establish a negative—that he was guilty of no fraud, duress or like poison in taking the conveyance in question.  In the zone of non-dependence, the ordinary presumption of good faith prevails.

   PRINCIPLE APPLIED:  In instant case the mother, 70 years of age, who conveyed to certain of her children, had not for years resided with them.  On a few occasions she did ask their advice but did not habitually rely on them, nor did they manage her affairs.  *Held*, no such confidential relation existed as to cast on the child the burden of proof.

**DEEDS: Evidence—Undue Influence—Declarations of Grantor Im-**
2 **peaching Deed—When Admissible.**  Subsequent declarations, alone, of a grantor, howsoever strong, impeaching the validity of his deed, will not authorize the setting aside of the deed. Such declarations should not be permitted to enter the record *unless* substantive evidence of undue influence or the like is *first* produced.  When such evidence is produced such declarations are admissible (a) to show the effect of such undue influence on the grantor's mind and (b) as indicating grantor's mental condition.

**DEEDS: Undue Influence—Mental Incapacity—Inference from Un-**
3 **just Disposition.**  It cannot be inferred that the grantor in a deed was of deficient mental capacity or was the victim of undue influence simply because the deed deprived some of the children of the interest they otherwise would have taken; the execution

of the deed being logical and rational in view of the circumstances.

PRINCIPLE APPLIED: The property in question was distributed after the father's death among all his children, a small portion being sold to pay debts. Later the mother purchased the share of each child and also that which had been sold under administration and still later redistributed the property among all her children. Later, again, the property was all conveyed to one of the children (presumably for value) and said latter child dying, the property passed to the mother again as his sole heir. Later, the mother conveyed to two of her sons, this latter conveyance being the one attacked.

**WITNESSES: Competency—Transaction with Deceased.** A witness, though interested, is competent to testify to a transaction with a deceased person in which the witness took no part.

**DEEDS: Undue Influence—Dying Request—Effect.** A deed made by a mother in compliance with the dying request of a son furnishes persuasive reason, in the instant case, for sustaining the deed.

*Appeal from Wapello District Court.*—HON. F. M. HUNTER, Judge.

MONDAY, MARCH 15, 1915.

ACTION in equity to set aside a deed of real estate and for other relief. The material facts are stated in the opinion. The trial court dismissed the bill and plaintiff appeals.—*Affirmed.*

*Earl Ferguson, C. R. Barnes* and *Roberts & Webber,* for appellant.

*A. C. Steck* and *E. K. Dougherty,* for appellee.

WEAVER, J.—The following general statement sufficiently explains the development of the controversy which this appeal brings to our attention. John J. Silvers died intestate in the year 1871, leaving a widow, Nancy A. Silvers, afterwards Nancy A. Sutton, and several children. He left a farm of

140 acres, of which 15 acres were sold in the course of administration for the payment of debts, but this tract was thereafter purchased by the widow in her own right. Of the remainder of the land, 40 acres were set apart to the widow and 85 acres passed in six equal shares to their surviving heirs or their representatives. The three older children married within a comparatively short time after their father's death and established homes. The plaintiff herein, Sarah L. Hughes, who was the third child, married at eighteen years of age. The three younger sons, known in the record as Marion (or Dick), Austin and Festus, who were still of tender years at the time of their father's death, remained longer at home and it may be assumed that the mother came to regard them as the objects of her especial care and affection. In the course of time, through a somewhat confusing series of deeds, the interests of the widow and the three older children became vested in Austin, subject to a life estate in the mother. Certain other conveyances will be noticed later. Austin died intestate, leaving his mother his only heir. After Austin's death, acting in pursuance, as is alleged by defendants, of a promise made by her to Austin when on his death bed, the mother made to the defendants herein, Marion and Festus, a deed under date of April 17, 1901, conveying to them what is described as, "all my undivided interest as heir at law of Austin Silvers deceased, or any other interest I may have in and to the following real estate," describing the entire farm of 140 acres and reserving therein a life estate for herself. This deed was duly recorded on April 23, 1901. In the year 1909, the mother died intestate, leaving as her only heirs her children, Frank, Sarah L. (plaintiff herein), Marion and Festus and a grandson who represents her deceased daughter, Phoebe. This action is brought by the daughter, Sarah L., to set aside the deed made by the mother as above shown. The original petition alleged in general terms that the deed "was procured in a wicked and designful manner by misrepresentation, fraud

and deceit at a time when the grantor was incompetent and incapable mentally and physically'' for the transaction of such business and by the exercise of fraud and undue influence. By a subsequent amendment, it was charged that the deed was obtained by duress and undue influence, which continued from the date of the deed until the grantor's death, eight years later. They also allege that the grantor was deceived by defendants into the belief that the paper she executed was a lease, instead of a deed, and that she lived and died believing that defendants were her tenants of the property instead of her grantees of the title. In a third amendment, the deed sought to be cancelled was for the first time set out. A fourth amendment was filed after the evidence was introduced, repeating the allegations of fraud, duress and undue influence and averring that the same began from a date prior to the making of the deed and continued during the remainder of the grantor's life. The defendants answered admitting that their mother died intestate and that plaintiff is one of her heirs at law. They also admit the conveyance to them by their mother and the record of the deed but deny all allegations of fraud, duress, and undue influence. They also plead the statute of limitations.

Upon hearing the evidence, the trial court found that the allegations attacking the validity of the deed had not been sustained by the evidence and that even if the defendants be held to have the burden of showing the good faith of the transaction, such fact had been affirmatively established.

Counsel for appellant have favored the court with a very elaborate and carefully prepared argument devoted principally to a discussion of the facts. Their analysis of the record is ingenious and the evident earnestness with which it is presented commands our respect, but we are unable to follow them to their conclusion.

I. It is alleged and counsel assume it to have been established that the defendants stood in such confidential rela-

tion to their mother that the burden is upon them to show the absence of undue influence on their part. In our judgment, however, the record does not justify the assumption. She was not and for years before her death she had not been a member of the same household with her sons.

**1. DEEDS : fraud : who must establish or negative : parent and child : confidential relation.**

While it is shown that in a few transactions she had asked the advice of one or both of them, there is no evidence that she habitually relied and depended upon them or that they assumed or had charge and management of her business. She was at that time, according to appellant's estimate, about 70 years old, by no means such an advanced old age that we may presume extreme senile decay. She probably had no very extensive business transactions or interests and so far as appears she was not dependent upon anyone for the management or conduct of her affairs. There is a presumption of confidential relation where a parent deals to his or her advantage with a child immediately after the latter arrives at majority, also where the child deals to his advantage with a parent when by reason of old age or weakness the condition of dependence is reversed, and when such conditions are shown, the burden is upon the dominant party to negative undue influence; but between these extremes, while neither parent or child is in a position of dominating influence over the other, the ordinary presumption of good faith obtains and he or she who alleges fraud or duress or undue persuasion is charged with the burden of proving it. That a parent should consult with a child or that a child should consult with a parent concerning matters of business interest is natural and proof of that fact alone has no tendency to prove undue influence. For a general discussion of this subject see *Curtis v. Armagast*, 158 Iowa 507.

We there said, "The unfavorable presumption arises only where the child by reason of youth and inexperience or other special circumstances is to some extent under the dominion, control or paramount influence of the parent, or where

the child is the dominant personage in the relationship and the parent has become the dependent intrusting herself and her interests to his advice and guidance.''

Applying that rule to the evidence in this case, we hold there is here no showing of such confidential relation as will cast the burden of proof on the defendants.

II. Nor do we find in the record any substantial evidences of undue influence over the mother in making the deed in question. If we lay aside the testimony as to alleged statements or complaints made by her after the deed was given, to the effect that the sons or one of them had made her do it and that she did not know what she was doing, the record is quite barren of anything like a showing of duress or undue pressure upon the grantor to induce her to make this conveyance. That such subsequent declarations by a grantor are not of themselves evidence on which to impeach the validity of a conveyance has often been held by this and other courts. *Johnson v. Johnson*, 134 Iowa 33; *Kah's Case [In Re Estate of Kah]*, 136 Iowa 116; *Ellis v. Newell*, 120 Iowa 71, 74.

2. Deeds: evidence: undue influence: declarations of grantor impeaching deed: when admissible.

It is, of course, true, as appellant argues, that such testimony may be admitted, not as showing undue influence, but as showing the effect on the parent's mind of whatever undue influence, if any, was exercised upon her to procure her to make the deed, and as indicating her mental condition. *Bates v. Bates*, 27 Iowa 110; *Stephenson v. Stephenson*, 62 Iowa 163; *Johnson v. Johnson*, 134 Iowa 33.

But this rule presupposes the existence of other substantive evidence of the alleged undue influence, and where none appears, the showing of subsequent statements, no matter how strong, will not sustain a decree setting aside the conveyance. In such case, the ''evidence is no more than hearsay and ought not to be received to establish the facts related.'' *Johnson v. Johnson, supra.*

And such, as we read it, is the case before us. It is only

by a forced materialization of bare suspicion into substantial fraud, by putting the worst construction upon acts and words equally consistent with good faith and integrity of purpose, and by finding indirection and perjury in the testimony of witnesses whose general reputation for truth and veracity are not otherwise unimpeached, that one can discover any ground upon which to negative the integrity and validity of the deed in controversy. Of some of the principal allegations of the petition,—for example, that the mother was deceived into the belief that the instrument executed by her was a simple lease instead of a conveyance of title,—there is not a word of testimony tending in the remotest degree to establish the truth. On the contrary, it is shown by plaintiff's own witnesses that her mother knew the true character of the paper and long before her death informed plaintiff she had made it. Indeed, if one of these witnesses is to be believed, she returned alone to the notary after the paper had been executed and re-examined it and appeared to be satisfied with it.

Much is said in argument of the unnatural and unjust disposition made of the property by this mother and it seems to be thought that plaintiff, because of faithful service in the family, while still a minor legally and morally owing such service, had acquired at least a moral right to share in property acquired by the mother many years after plaintiff had left the home and ceased in any manner to contribute to the mother's maintenance or to assist her in the accumulation of an estate. This claim is without justification in fact. Plaintiff's right to share in the estate left by her father had been fully recognized and she had sold and conveyed her portion to her mother, receiving presumably its full value. Still more, the mother, having had her widow's share set apart to her, having also re-purchased in her own right that part of the land sold for the payment of the debts of the estate and having bought out the inter-

3. Deeds: undue influence: mental incapacity: inference from unjust disposition.

ests or shares of her children, thus perfecting the distribution of the father's estate and concentrating the title in herself, proceeded by a deed of conveyance to re-distribute the same property among all her children, including plaintiff, who thereafter sold and conveyed to Austin the share and interest thus derived. In other words, this land had twice been distributed among these children, once as the property of the estate of the father, and again by the voluntary act of the mother, who had become its owner, and on each occasion, plaintiff had received and accepted the share given her and by sale and conveyance thereof had realized upon it. The title which thereafter came to the mother by inheritance from Austin was not burdened with any equity, natural or otherwise, in favor of plaintiff, who contributed nothing to its acquisition, and it was neither strange nor unnatural if she felt that her duty as a parent to devote her estate to her children generally had been fully discharged and that she was at liberty to dispose of this property received from her son in accordance with her personal inclination and to prefer those who she believed (whether correctly or incorrectly is immaterial) had the greater claim on her bounty. The argument that the court should infer either lack of mental capacity on her part or the exercise of undue influence on the part of the grantees, because the deed operated to give to the latter an unnatural or unjust preference in their mother's estate, is not justified by the record.

III. There is evidence that Austin, when about to die, requested his mother to convey to his brothers, Marion and Festus, subject to her own life estate, the property which she would by law inherit from him and that she promised so to do.

4. WITNESSES: competency: transaction with deceased.

This testimony, appellant insists, should not be considered because the witnesses were incompetent under the statute, Code Sec. 4604. Without pausing to review the authorities, it is sufficient to say that under the construction put upon the statute by this court—a construction which is much less strict

than is adhered to by the courts of some jurisdictions—we think the witnesses qualified themselves to testify by showing that they took no part in the conversation or transaction of which they undertake to speak. While we think proof of the dying request of Austin and his mother's promise to convey the property to the appellee is not necessary to the affirmance of the decree rendered below, it is nevertheless an important circumstance and affords very substantial support for the finding sustaining the deed. Indeed we have held that under some circumstances a promise of that nature will be specifically enforced. *McDowell v. McDowell,* 141 Iowa 286.

But even if such a case is not here made, a request and promise of that nature is one which the average mother would regard as peculiarly sacred and in performing it no wrong, legal, equitable or moral, would be done to her surviving children. Had Austin lived to enjoy the property or to spend it in pursuit of his own pleasure, plaintiff would have had no cause of complaint. Had he made a will devising it to charity or to a friend outside of the family or to his brothers, Marion and Festus, plaintiff could not rightfully have objected thereto. Why then should it be said that she has been wronged because her mother, receiving the legal title by operation of law, sees fit to treat her promise as binding upon her conscience and carries it into effect?

5. Deeds: undue influence: dying request: effect.

It appears in the record that the mother contracted a second marriage which did not prove a happy one and a divorce was procured by her some time after the death of her son Austin. The relations between herself and husband and his refusal to unite with her in making the conveyance caused delay in the matter and it appears that the deed was not executed and delivered until the day after the decree of divorce was entered, when the husband was no longer a necessary party to the conveyance. We are asked by counsel to note this fact as constituting a very suspicious circumstance pointing to the conclusion of bad faith, but we confess our

inability to discover in it the slightest evidence tending to support any allegation of the petition. It is gravely hinted that in some way an advantage was taken of the divorced husband, but as he is not in this case and so far as we know is satisfied with his emancipation from the bonds of matrimony, the suggestion of a possible wrong to him is superfluous.

Counsel also allow their zeal to lead them beyond the limits of fair argument when they describe the request of Austin to his mother and her promise to him to convey the land to Marion and Festus as a "cold blooded conspiracy" against the alleged rights of the plaintiff, a conspiracy having its origin in the mind of the dying man, whose conduct therein, if truly stated, is said by counsel to explain how it happened "that he had got so much of the property into his own name." Conspiracy against whom, and to what end? Plaintiff had no interest of any kind in the property. She could derive none by Austin's death, for she was not his heir. He had the absolute right to dispose of it by deed, by will, by gift, to whomsoever he pleased. If he died without making such disposition, the mother would inherit it and with it the same unlimited power to devise, convey or give it away. What occasion then for a secret, wicked combination to accomplish a thing which both or either had a perfect and indisputable right to do?

Again, we may ask why the insinuation, which is more than once repeated, that Austin had acquired his title to the land by some fraud or undue advantage at the expense of the other children of the family? Such fact, if it existed, would be without bearing in this case, but there is an utter and complete absence of any fact or circumstance in the record affording any ground for the imputation. So far as shown, he had acquired the interests of the other children by ordinary deeds of conveyance for a valuable consideration duly paid and his good faith may not be impeached by substituting sweeping denunciation for evidence.

The mother is shown to have given personal direction to the attorney who drew the deed. When prepared, she took it personally to the notary for its acknowledgment. It was recorded at her direction or with her knowledge. It had been thus on record for eight years before she died. She had never taken any steps to repudiate it or set it aside. It would be a palpable perversion of the evidence to hold that she was so imbecile as not to understand the meaning and effect of what she had done or was under such duress during all that period that had she desired to rescind the transaction she could not have done it. It may be true, as appellant argues from the record, that the grantees manifested an interest in having their mother make this conveyance, that they asked her to make it, or that they or one of them accompanied her when she acknowledged it. Such interest and such conduct are not inconsistent with perfect good faith and in the absence of other inculpatory evidence are wholly insufficient to show undue influence or duress. The trial court was, therefore, right in holding that plaintiff had failed in establishing her alleged cause of action.

IV. Concerning the effect of the statute of limitations, the position of the appellant, that in case undue influence is shown in the execution of the deed the statute does not begin to run until such influence has been removed and the grantor is in position to assert her rights, may be conceded to be correct. In this case, finding as we do that the allegations of confidential relation between grantor and grantees, and of undue influence and duress exercised by the latter have not been sustained, we see no reason why the action should not be held to have been barred. The deed was made and recorded in April, 1901, and this action was not begun until October, 1911, an interval of more than ten years and confessedly more than the period of limitation.

For the reasons stated we find the decree appealed from to be correct and it is—*Affirmed.*

Deemer, C. J., Evans and Preston, JJ., concur.