BERTIE SECOR, Administrator, et al., Appellants, v. JAMES F. SIVER et al., Appellees.

**WITNESSES:** Competency—Insufficient Objection. An objection to the competency of a witness must specifically state the *facts* which work incompetency. An objection which simply asserts that a witness is "incompetent and unqualified" is quite insufficient to raise any question of competency.

**WITNESSES:** Transactions with Deceased—Insufficient Objections. An interested witness may, in an action for damages for fraudulent representations, testify against the administrator of a deceased:

1. As to the description, quality, and value of the several tracts of land which passed in the deal.

2. As to his reliance on the representations.

3. As to the condition in which he found the property which was received from the deceased.

**WITNESSES:** Transactions with Deceased—Insufficient Objection. An objection that a witness is incompetent to testify to a personal *transaction* with a deceased does not necessarily raise the point that he is incompetent to testify to a personal *communication* with deceased.

LADD, SALINGER, and STEVENS, JJ., dissent on the present record.

**APPEAL AND ERROR:** Review—Retaxation of Costs. Costs taxed to a defeated administrator in his official capacity will not be retaxed, on appeal, to the administrator in his individual capacity, on the mere claim that the administrator brought the action officiously, and not under authority of court.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

MARCH 15, 1917.

OPINION MODIFIED ON REHEARING, APRIL 13, 1920.

ACTION to recover upon a foreign judgment, entered against the defendants James E. Siver and Elizabeth Siver. In connection with such claim, it is further alleged that such defendants, having property liable to be subjected to the payment of such debt, are about to convey it to their two sons, Frank Siver and Ed Siver, for the fraudulent purpose of cheating, hindering, and delaying creditors. Upon these allegations, an injunction is asked, restraining the making, delivery, and record of such conveyance, and for other relief. On trial to the court, the petition was dismissed, and plaintiff appeals.—*Affirmed.*

*E. A. Johnson,* for appellants.

*Redmond & Stewart* and *Charles Penningroth,* for appellees.

PER CURIAM.—The defendants James E. Siver and Elizabeth Siver were formerly residents of New York, from which state they removed to Iowa, about the year 1896. While residing in New York, James E. Siver, being the owner of a house and lot in the town of Altamont, exchanged the same with John S. Secor, for a tract of about 90 or 100 acres, lying upon what was locally known as the Hildeberg Mountains. In the exchange, the Altamont property was estimated at $1,500, and the farm at $3,500, and payment of the difference was secured by a mortgage upon the land. Later, the mortgage was foreclosed, and the land was sold to Secor at sheriff's sale for $1,010, leaving a deficiency judgment against the mortgagors of about $1,700. This judgment was rendered August 28, 1895. In March, 1912, a transcript of this judgment was sent for collection to ap-

pellants' counsel, Mr. Johnson, at Lisbon, Iowa, at which place the judgment defendants then resided. At this time, the defendant James E. Siver held the legal title to two pieces of town property, one alleged to be worth $1,000 to $1,200 and another alleged to be worth from $2,000 to $2,500. Johnson, meeting Siver, told him of having received this claim for collection, and there was talk between them, contemplating an effort by Siver to borrow from a local banker the necessary money with which to make a settlement or compromise of the demand upon him. The banker in question not being at home, further negotiation between plaintiffs' counsel and the defendant was postponed, to be taken up again the following Monday. Defendant appears, however, to have taken other advice, and telephoned to his two sons, who responded by coming to his home. It is the claim of the father and sons that he was indebted to them, in a manner and to an amount which is not, at this time, material, and that, in payment and satisfaction of such claims, the judgment defendants, husband and wife, undertook to make conveyance of one of said pieces to their son Frank Siver, and the other to their son Ed Siver. The sons then returned to their several homes, with the understanding that the deeds would be made on the following day, and that their father would deliver the same to the county recorder for record, and for return by that officer to the grantees. The deeds were, in fact, executed, and taken to the recorder's office by James E. Siver on Saturday afternoon. The hour was too late to secure their entry on the auditor's transfer book for that day, and the deeds were left in the recorder's hands, with a penciled memorandum on each for its return to the grantee when recorded. Mr. Johnson became aware of these conveyances on Saturday evening, and immediately prepared the original petition in this case, and, on the next day, Sunday, obtained a temporary in-

junction, as therein prayed, and caused it to be served during the day, and before the actual record of the deeds.

The defendants Frank Siver and Ed Siver answered separately, denying the alleged fraudulent character of the conveyances. The judgment defendants, James E. Siver and Elizabeth Siver, answered separately, denying the claim sued upon, and pleading, by way of counterclaim, that they entered into the exchange of the Altamont property for the mountain farm, as hereinbefore mentioned; that they were led and induced to enter into such exchange by the fraud and false representations of said Secor; that said defendants had no practical experience or knowledge with respect to such property as Secor proposed to convey to them; that he represented and described the property as having a thrifty and productive orchard thereon, a fertile soil, a suitable and habitable house, a sawmill, having a good business, and being within convenient reach of growing or standing timber, from which custom sawing could be expected, 35 acres of meadow and pasturage sufficient to keep 8 to 10 cows, and that the property was easily worth the price of $3,500 which he placed upon it. Believing and relying upon such representations, defendants say they entered into the agreement, conveyed the Altamont property to the said Secor, and gave him the note and bond, or mortgage, upon which the judgment now in suit was procured. They allege, however, that said representations were false; that the house was in a dilapidated and ruinous condition; that the orchard was very largely infected with borers, and would not procure a marketable crop; that the sawmill was a worthless ruin; that there was not pasturage for more than four cows; that the timber fit for sawing in that neighborhood had been exhausted; that most of the land lay on an unproductive mountain side; and that the actual value of the property did not exceed $1,000, or substantially nothing above or beyond the value of the Alta-

mont property, for which it was exchanged; and that, by reason of the fraud so perpetrated upon them, they have been damaged to an amount greater than the unsatisfied remainder of the judgment rendered against them in the foreclosure suit.

To this counterclaim the defendant demurred, as stating no ground of recovery or set-off in the defendant's favor, and as being matter which should have been set up or pleaded in the foreclosure proceedings. The demurrer was sustained; but, upon defendants' appeal from the ruling, it was reversed by this court, and the cause remanded for trial upon the issue so tendered. See *Secor v. Siver,* 165 Iowa 673. Upon remand of the case to the court below, a trial was had upon the merits, with the result already indicated.

In support of appellants' demand for a reversal of the judgment of the trial court, counsel present and argue several propositions.

I. It is argued that the entire evidence as to representations made by Secor with reference to the land he proposed to exchange with Siver is to be found in the testimony given by Siver and his wife, and that, both said witnesses being incompetent to testify to such matters against Secor's administrator, the court's finding upon that issue is without support in the record.

1. WITNESSES: competency: insufficient objection.

Assuming, for the present, that objections to the competency of the witnesses were properly raised, it is doubtless true that some portions of their testimony should be excluded from consideration, in passing upon the merits of the case; but we think it not less clear that the husband and wife were still competent to testify to much of the matter related by them. The familiar statute (Code Section 4604) relied upon by the appellant provides that neither a party to a suit nor the husband nor wife of such party

shall be "examined as a witness in regard to a personal transaction or communication between such witness and a person at the commencement of such examination deceased, against the executor or administrator of such person." Statutes of this general character are to be found in most of the states; but, in the matter of their construction and effect, there have been developed in the several jurisdictions widely varying degrees of strictness and liberality. The ancient rule which disqualified as witnesses all parties and persons having an interest at stake in the litigation no longer prevails, and, as a general proposition, everyone is competent to testify in his own case, the effect of his interest in the result being limited to its legitimate bearing upon the credibility and value of his testimony. To this, the statute mentioned provides an exception. In applying it, this court is committed to the doctrine that such exception should not be enlarged by construction, and that no witness should be held incompetent unless he comes within the statutory description, and then only as to the particular class or kind of testimony concerning which the statute says he shall not be examined. Following that decision, it is well established by our decisions that, while the statute makes a party to the suit and the husband or wife of such party incompetent to testify to personal transactions or communications between such witness and the deceased, yet such incompetence to testify does not extend to transactions or communications had in his or her presence between the deceased and another person. *Lines v. Lines,* 54 Iowa 600; *Smith v. James,* 72 Iowa 515, 517; *Leipird v. Stotler,* 97 Iowa 169; *Dettmer v. Behrens,* 106 Iowa 585; *Foreman v. Archer,* 130 Iowa 49, 51; *Hughes v. Silvers,* 169 Iowa 366.

It has also been frequently held that a party is competent to testify to facts and circumstances from which the truth as to alleged transactions between such party and the

deceased may be inferred, even where his direct testimony to such transaction may be excluded. *Graham v. McKinney,* 147 Iowa 166; *Campbell v. Collins,* 133 Iowa 152; *Curd v. Wisser,* 120 Iowa 743, 745; *Furenes v. Eide,* 109 Iowa 511; *Walkley v. Clarke,* 107 Iowa 451; *McElhenney v. Hendricks,* 82 Iowa 657.

And where the party testifying claims to have been defrauded by false representations made by the deceased, he is not incompetent to testify to his reliance on such representations. *Gray v. Sanborn,* 178 Iowa 456.

It will be observed, therefore, that a party to a suit against the administrator of a deceased person is not, in any general sense of the word, an incompetent witness in his own behalf, and his right to testify to any material fact within his knowledge is unrestricted, except as to the particular matter concerning which the statute provides he shall not be examined: that is, personal transactions and communications between himself and the deceased person.

We are satisfied that the testimony of James E. Siver and wife concerning the deal with Secor was not all vulnerable to the statutory objection, and that enough was admissible to make the issue one of fact, and not of law. Under our practice in equitable actions, all evidence offered is generally preserved in the record, subject to such objections as may be made thereto by either party. On appeal to this court, we must presume that the trial court disregarded all testimony which was vulnerable to the objections made, if any, and that its conclusion was based solely upon the admissible evidence. If, on a review of the record, we find that it fairly presents an issue in fact for judicial determination, we have then only to consider whether, in our judgment, the decree below is or is not substantially correct; and, while the hearing in this court is *de novo,* it is always had with due recognition of the fact that the trial court is better situated to properly estimate the veracity

of witnesses and weight of their testimony than are we, and its opinion with reference thereto is entitled to our consideration.

II. The scope of our consideration of the alleged incompetency of witnesses necessarily depends upon the character of the objections raised by the appellant in the court below. It is the settled rule in this and in most courts that objections to the incompetency of witnesses must be made specific, and set forth the grounds or facts which, it is claimed, render their examination improper. An objection to the evidence offered is not sufficient to raise the question of the competency of the witness, and, if the specified objection is found not to be well taken, the party making it cannot, on appeal, avail himself of another objection which he has not specified. The abstract in this case discloses that part of the evidence used in the court below was in the form of a transcript or depositions, and that, when the testimony of the defendant James E. Siver was offered, and before any part of it had been read, the plaintiff entered the following objection:

"Plaintiff objects to each and every interrogatory propounded to the witness James Sivers in this transcript, as being incompetent, irrelevant, and immaterial, calling for hearsay testimony, calling for the opinion and conclusion of the witness, and no facts; not the best evidence. The witness is incompetent and unqualified, and the question is leading and suggestive, and the plaintiff moves to strike out each and every part of each and every answer made, for all the reasons stated in the foregoing objection."

To this was added a "concession," in the following form:

"It is conceded that the foregoing objection and motion shall stand without repetition."

At a later stage of the trial, another deposition by James E. Siver was introduced. Therein, the witness first

identified himself as the judgment defendant, and stated that, in the year 1893, he owned a certain residence property in the town of Altamont, New York, of the value of $1,500. At this point in the examination, the following entry was made:

"Objected to by plaintiffs as incompetent, irrelevant, and immaterial, leading, suggestive, and hearsay, and not the best evidence, calling for the opinion and conclusion of the witness, and no fact. It is a voluntary statement of the witness, calling for the mental operations of the witness; and also that the witness is incompetent to testify as to matter inquired about, and also incompetent under the statute prohibiting the witness, as a party to the suit, from detailing personal transactions with a person since deceased, and involving the matters in controversy as against the administrator in this case. Plaintiffs move to strike each and every answer and each and every part of each answer, for the same reasons as stated in the foregoing objection."

By agreement of parties, this objection stands "to each and every interrogatory propounded to the witness."

The foregoing constitutes the entire record of the objections to the competency of James E. Siver to testify. The first is manifestly insufficient to raise the question which appellant argues to this court. As will be seen, this objection, so far as it relates to the witness, is simply a general assertion that he is "incompetent and unqualified." It does not direct the attention of the court to the fact or facts which, to counsel's mind, make him incompetent. An offered witness may be wholly incompetent to testify at all, because of want of capacity to understand the obligation of an oath; or his incompetence may be limited to certain matters, knowledge of which he has acquired in professional confidence, as an attorney, a physician, or a priest; his marital relations may be such as to exclude him from the

witness stand; or his interest as a party, or otherwise, may render him incompetent to testify to transactions or communications between him and a person since deceased. It is the right, both of the trial court and of this court, as well as of the opposing party, to be advised by counsel of the ground of his objection; and, if none be given, it will be treated as waived. In 2 Elliott on Evidence, Section 720, it is said:

"A mere general objection that the witness is incompetent is not, ordinarily, sufficient; the objector must state particularly and specifically the grounds of objection."

This 'rule is abundantly supported by the authorities generally. For example, in 30 American & English Encyclopedia of Law 973, it is said:_

"In many cases, a witness may be competent to testify to some of the facts in issue, though incompetent as to others, and therefore should not be rejected generally. It follows that the objection should be sufficiently specific to enable the court to pass on the competency of the witness as regards the particular facts which he is called to prove, as well as to allow the opposite party to remove the incompetency, if possible."

To the same effect are *Emery v. Vinall,* 26 Me. 295; *Elwood v. Diefendorf,* 5 Barb. (N. Y.) 398; *Richardson v. Wilkins,* 19 Barb. (N. Y.) 510; *Peters v. Horbach,* 4 Pa. 134; *Brown v. Grove,* 116 Ind. 84; *Foxton v. Moore,* (Iowa) 87 N. W. 492; *Holmes v. City of Fond du Lac,* 42 Wis. 282, 285.

The other objection made later in the case was more specific, and, when interposed to a question calling upon the witness to speak of transactions between himself and

deceased, would fairly raise the question

**2. Witnesses:** of the witness's competency. It is to be no-
**transactions**
**with deceased:** ticed, however, that, when this objection
**insufficient ob-**
**jection.**          was made, the witness had not been asked,

nor was he attempting to speak of, any-
thing in the nature of a personal transaction between him-
self and the deceased. His subsequent, direct examination
was also confined by his counsel to matters about which,
for the most part, he was competent to testify: as, for ex-
ample, the description, quality, and value of the property
which he owned, and of the property which he acquired by
the trade, his belief that the latter was as represented, the
condition in which he found the property, and conversations
which he claims to have heard between his wife and de-
ceased. To this extent at least, the objection to the witness
was not well taken. It is quite possible that, in detailing
such alleged conversations between his wife and the de-
ceased, the witness at times overstepped the limits of the
question put by his counsel; and, unless it shall appear
that the objection thereto was waived, the testimony to that
extent must be disregarded. But, even if this be done, we
are unable to agree with appellant that the defense or
counterclaim is without substantial support in the evidence.

What we have here said with reference to the testi
mony of James E. Siver is quite applicable, also, to objec·
tions raised to the witness Elizabeth Siver. These objec-

tions are substantially the same as those
**3. Witnesses:**
**transactions** made to the competency of her husband:
**with deceased:**
**insufficient ob-** that is, that, as a party to the suit, she is
**jections.**
not a competent witness to personal
transactions between herself and the deceased. Bearing in
mind that this statute excludes the witness from testifying,
over the opposing party's objection, to either of two things,
personal conversations and personal communications be-
tween the witness and the deceased, it is worthy of note that

the objection made to the competency of the defendants is, in such instance, to his or her right to testify to personal "transactions" with the ·deceased, no mention being made of personal "communications." It would be going too far to say that the word "transaction" will in no case include or embody the meaning of "communication" or "conver· sation;" but that, in general, they are not equivalent terms, is quite evident. Had the legislature so regarded them, both words would not have been used. Primarily, a trans· action is something done; a communication is something said by one person to another. *Hall v. Hilley*, 139 Ga. 13 (76 S. E. 566).

III. Passing from the question of the competency of the witnesses to the merits of the issue upon the defend· ant's counterclaim, it is sufficient here to say that the court below was justified in finding the equities to be with the appellees. It may be true that defendants appear to have been "easy marks" for a shrewd and persuasive trad· er; but the fact that, as a net result of the deal with him, he shortly became the owner of both pieces of property and a deficiency judgment of more than $1,600 against the de· fendants, while they were left without a dollar to represent any consideration therefor, makes it very clear that they were grossly overreached in the transaction. If the testi· mony is to be believed, this was accomplished by misrepre· sentations of a material character. That defendants were entitled to set up their claim for damages in this action on the foreign judgment was settled upon the first appeal. We find no reason for disturbing the decree of the district court upon the merits of the controversy.

IV. The court below having dismissed the plaintiffs' bill, defendants moved that the costs be taxed to the an· cillary administratrix, in her individual capacity, on the

**4. APPEAL AND ERROR: review: retaxation of costs.** theory that, in bringing and prosecuting this action, she acted voluntarily and officiously, and without authority of the court. The motion was denied, and the defendants have appealed from such ruling.

The costs appear to have been taxed against the administratrix as such, and there is nothing in the record to indicate that defendants are thereby prejudiced. We cannot assume that the costs will not be paid, as taxed, or that the orders of the court below in that respect will not be observed by the plaintiff. There is no apparent error in the ruling complained of, and the appeal therefrom cannot be sustained.

It follows that, on both appeals, the decree of the district court must be—*Affirmed.*

GAYNOR, C. J., WEAVER, EVANS, and PRESTON, JJ., concur.

STEVENS, J. (dissenting). As the writer interprets the record before us, the conclusion of the majority is erroneous in two particulars: First, in holding the objection of counsel to the competency of James E. and Elizabeth Siver as witnesses insufficient, under the statute, to cover communications; and, second, in holding that any substantial part of their testimony is admissible. The testimony of these witnesses covered two conversations with John S. Secor, and related to the exchange of properties complained of. James E. and Elizabeth Siver were husband and wife, and were sued jointly in this action. The objection of counsel, which is copied in full in the majority opinion, was based upon Section 4604 of the Code, but does not refer more specifically thereto than as "the statute prohibiting the witness, as a party to the suit, from detailing personal *transactions* with a person since deceased." Both "transaction" and "communication" are used in the statute. The

word "communication" is omitted from the objection. It is, of course, true that the witnesses were competent to testify in their own behalf to any matter not coming within the inhibitions of the statute. The objection specifically challenged the competency of the witnesses to testify to all matters relating to personal transactions with Secor. The inclusion of the word "communication" would have added nothing to the plain meaning and intention of counsel, which manifestly was to have excluded all communications and transactions between the witness and deceased which were material to the issues. The attention of the court was directed to the statute under which counsel claimed the witnesses were incompetent to testify. It may be conceded that the words "transaction" and "communication" are not necessarily synonymous, and that either may exist independent of the other. If we limit the word "transaction" strictly to matters which are immediately connected with and part of a consummated act or contract, it must, nevertheless, necessarily include, directly or indirectly, conversations, communications, and negotiations leading thereto. A communication is not necessarily a transaction, and may not in any way relate to a matter of business; but a consummated transaction of the nature involved in this controversy, as shown by the evidence, included numerous communications and conversations. This court, in *Sheldon v. Thornburg*, 153 Iowa 622, said:

"While the word 'transaction,' as used in the statute, may not, perhaps, be open to any all-embracing definition universally applicable to all cases, it is, perhaps, sufficient for present purposes to say that anything said or done between the witness and deceased, or any act or communication in which they both had any part, and of which both had knowledge, and concerning which the deceased, if living, could speak in corroboration or denial of the statements of the living witness, is a 'transaction,' within the

purpose and intent of the law, and the surviving witness, if disqualified by interest, is incompetent to testify concerning it against the administrator of such deceased person."

This definition was criticized in *Hayes v. Snader,* 182 Iowa 443; but the limitations placed thereon in said case are scarcely applicable to the present controversy. As bearing upon this question, see *Holliday v. McKinne,* 22 Fla. 153; *Harte v. Reichenberg,* (Neb.) 92 N. W. 987; *Cunningham's Admr. v. Speagle,* 106 Ky. 278 (50 S. W. 244); *Whitney v. Brown,* 75 Kan. 678 (90 Pac. 277).

In the opinion of the writer, the objection was clearly sufficient; and, if the witnesses were, in fact, incompetent, under Section 4604, to testify to either communications or transactions with Secor, it should be sustained.

James E. Siver, his wife, and Secor were all present during all of the conversations covered by counsel's inquiry. The conversation of Secor was apparently addressed to both of the defendants, although the conversations were probably had principally with the husband. Occasionally, the conversation between the two men was interrupted by an inquiry of the wife as to various matters relating to the farm, defendant's ability to pay therefor, etc. The conversation appears to have been orderly, and but one of the parties spoke at a time. The matters detailed by the witnesses relate to the same subject-matter. Both defendants were interested listeners to what Secor said. There were not two independent series of conversations, one between James E. Siver and Secor, in which the wife took no part, and another between the latter and his wife, in which the husband took no part, but two continuous conversations, addressed to and participated in by all of them. It does not appear that there was a completed, independent conversation between James E. Siver and Secor, in which his wife took no part, but which she overheard, nor a completed, independent conversation between Secor and Mrs.

Siver, which the husband overheard, but in which he took no part, but both conversations related to a single subject-matter, were continuous, and were participated in by the three parties present. To hold otherwise would be to pervert the facts, and utterly destroy the statute. No doubt, a witness who is incompetent to testify to a personal transaction with a person deceased at the time of the trial, is competent to relate a conversation in which the witness took no part, between such deceased person and a third party. *Lines v. Lines,* 54 Iowa 600; *Smith v. James,* 72 Iowa 515, 517; *Hughes v. Silvers,* 169 Iowa 366; *Schubert v. Barnholdt,* 177 Iowa 232; *Hart v. Hart,* 181 Iowa 527; *Hayes v. Snader, supra.* But the evidence offered clearly related to personal transactions with Secor, participated in by both of the witnesses, and they could not be examined in reference thereto.

For the reasons stated, I would reverse.

LADD, J., concurs in the dissent.

SALINGER, J., concurs in the conclusion reached in this dissent.