C. M. GRAY, Appellee, v. SUSIE M. SANBORN, Administratrix, Appellant.

**FRAUD:** Pleading—Variance. Allegations of the representations inducing a sale or exchange are sufficiently met by proving representations *having the same general meaning and effect.* (See Sec. 3639, Code, 1897.)

PRINCIPLE APPLIED: Plaintiff pleaded that the alleged false representation was "that the land was all very level plow land, all tillable."

The proof shows that the representation was "that the land was good hard land" (meaning that it would not blow away); "that the land was all smooth steam plow land" (meaning that it could be cultivated with a steam plow); "that it was all good level land steam plowed and all fit and subject to cultivation."

*Held*, no variance.

PLEADING:    Issue, Proof and Variance—Affirmative Showing of Prejudice.    Variances between allegation and proof are immaterial, unless the complaining party affirmatively establishes (a) that he has been misled, and (b) in what particular manner he has been misled.    (Sec. 3597, Code, 1897.)

PLEADING:    Amendments—Amendment Pending Motion for New Trial.    An amendment to meet the proof is allowable as late as the pendency of a motion for a new trial.    (Secs. 3600, 3760, Code, 1897.)

PLEADING:    Issue, Proof and Variance—Principal and Agent.    Allegations that certain alleged false representations were made by the defendant may be met by proof that such representations were made by the defendant's agent.

FRAUD:    Reliance on Representations—Evidence.    Plaintiff, seeking to recover damages for false representations, may very properly testify to what defendant's agent said to him, prior to the closing of the deal, relative to the defendant's business, his financial responsibility, his high standing as a citizen, and to the fact that the agent's information as to the character of the property had been acquired from defendant himself.    All this has bearing (a) on plaintiff's *belief* in the truth of the representations; (b) on his *reliance* on such representations; (c) on his *right* to so rely; and (d) on his *care* in so doing.

WITNESSES:    Competency—Transactions with Deceased—Reliance on False Representations.    An interested litigant is not prohibited by the so-called "Dead Man's Statute" (Sec. 4604, Code, 1897) from testifying against the administrator of a deceased:

1.    To facts from which, by inference, other facts may be found; nor

2.    To facts which deceased could not dispute were he alive.

PRINCIPLE APPLIED: Plaintiff was seeking to recover, against the estate of a deceased, damages on account of false representations made by deceased to plaintiff. Plaintiff first estab-

lished by other admittedly competent witnesses that deceased did make to him (plaintiff) certain representations. Plaintiff himself was then permitted to testify *that he relied upon the various statements made by deceased, and was induced thereby to make the trade.*

*Held,* the ruling was proper.

FRAUD: Measure of Damages—Sale of Land—Fact Representation 7 as to Value. The measure of damages for false representations in the sale or exchange of land is:

　1. The difference between the market value of the land as it was in fact at the time of the sale or exchange, and what it would have been worth had it been in the condition as represented; or

　2. The difference between the specifically represented *fact* value (if such was the representation), and what it was reasonably worth at the time the sale or exchange was made.

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

TUESDAY, NOVEMBER 21, 1916.

ACTION at law, to recover damages for false and fraudulent representations, made by M. J. Sanborn, regarding lands in Kansas and in Decatur County, Iowa, in negotiations for an exchange thereof, for lands owned by plaintiff in this state. After the action was commenced, M. J. Sanborn died, and his wife, who was appointed his administratrix, was substituted as defendant. We shall speak of the deceased in this opinion as if he were still defendant. Defendant denied the alleged fraud, although he admitted the making of the contract of exchange. Upon the issues joined, the case was tried to a jury, resulting in a verdict for plaintiff, in the sum of $11,000, with interest. Judgment was rendered on the verdict, and defendant appeals.—*Affirmed.*

*J. G. Myerly,* for appellant.

*Parker, Parrish & Miller,* and *J. W. White,* for appellee.

DEEMER, J.—I. The contract of exchange was in writing, and was finally consummated about June 7, 1912, the

lands involved being a tract in Thomas County, Kansas, and another in Decatur County, Iowa, heretofore owned by defendant, and another tract in Dickinson County, Iowa, owned by plaintiff. All the lands were encumbered somewhat heavily, and no values were placed upon the same in the contract. Plaintiff agreed to give his land in Dickinson County and $1,900, in exchange for defendant's lands in Iowa and Kansas, and the encumbrances were especially taken care of in the contract.

1. FRAUD: pleading: variance.

Plaintiff alleges that defendant falsely and fraudulently represented and stated to plaintiff that the Thomas County, Kansas, land, was all very level plow land, all tillable, and that there was growing on said land at said time 800 acres of fine winter wheat, in fine condition; also falsely held out certain of the land in Iowa to be good, tillable land, stating that 90 acres were under cultivation, and that there were good, substantial buildings, consisting of a dwelling house, barns, corncribs, and other farm buildings, and that there were 50 acres of land in tame grass, and 35 acres in corn, all in good condition; that, in truth and in fact, the land lying in the state of Kansas, above described, was not all level plow land and tillable, but that the same is cut up by the Smoky River, running through said land, and various small tributaries, cutting up said land into small tracts, and that there are, by reason of said river and tributaries, three distinct ravines running diagonally through said tract of land, making it rough, uneven, and undesirable, and that there are at least 200 acres of said land that are not tillable; that, instead of there being, at said time, 800 acres of fine growing wheat, there were but about 230 acres of wheat, and it was, at said time, in very poor condition, was then heading out, and was about 12 inches high, and absolutely worthless and unfit for harvest.

As to the Iowa lands, plaintiff alleges that the 128-acre tract, hereinbefore described as lying in Iowa, is rough, untillable land, unsuitable for farming purposes; that there was, at

said time, not to exceed 25 acres thereof under cultivation, and not to exceed 25 acres could be cultivated; and that there was, at said time, only a small patch of timothy grass, and the balance of the 25 acres was in corn, but the same was in poor condition and valueless.

In an amendment to the petition, plaintiff alleged that defendant also falsely and fraudulently stated that the land described in said contract, and located in the state of Kansas, was reasonably worth, and of the actual cash market value of, $35 per acre; and that the land described in said contract, and located in Decatur County, in the state of Iowa, was reasonably worth, and of the actual cash market value of, $65 per acre; and that the values, as fixed by him, were within his own personal knowledge; that the said M. J. Sanborn further represented to the plaintiff that he had a proposal for a trade of the said Kansas land with another person, which proposal he was going to accept, unless he made the trade with the plaintiff which was then under consideration and afterward incorporated in said contract; and that it was necessary for him to accept or reject said proposal immediately, and, therefore, the proposed trade with the plaintiff could not be delayed, to enable the plaintiff to examine the land in Decatur County, Iowa, and in the state of Kansas; but that the plaintiff might rely upon his representations with respect to said value, and with respect to the conditions and quality of all of said land.

In making his proofs, plaintiff was permitted to show, over defendant's objections, that the same were irrelevant and immaterial; that defendant, among other things, said the Kansas land "was good, hard land" (meaning that it would not blow away); "that the land was all smooth steam plow land," which meant it was all susceptible of being cultivated with a steam plow; that it was "good, hard land;" that "it was all good, level land, steam plowed, and 'all fit,' and subject to cultivation." The testimony showed that the land was not hard land, and was not all tillable; that it was loose and

sandy, and, when plowed or exposed to the wind, the soil blew away; and that it was not fit for cultivation. Proof of the other alleged statements and the falsity thereof, both as to the Kansas land and the land in Decatur County, was also made. Appellant contended in the court below, and argues here, that the testimony we have heretofore quoted was irrelevant and immaterial to the issues; and that there is a fatal variance between the allegations and the proof. This point was made to the end of the trial and after verdict; and, while a motion for a new trial and an application to vacate the judgment were pending, plaintiff filed an amendment to his petition, with leave of court, in which he alleged, to meet the proofs in the case, that defendant represented, in addition to the statements made in the petition, that the Kansas lands were "all hard, black land." Defendant moved to strike this amendment, for various reasons. This motion was overruled, and exception taken. No answer was filed to this amendment.

Upon this record, the question arises as to whether or not there was any variance between the allegations and the proof, and, if so, whether or not defendant may now take advantage of it.

Plaintiff properly pleaded the representations and statements claimed to have been made to him regarding the lands; but he was not required to prove them verbatim *et literatim*. He was required to prove representations which were substantially the same as those alleged; that is, statements having the same general meaning and effect. *Endsley v. Johns* (Ill.), 12 N. E. 247; *Fisher v. Mellen*, 103 Mass. 503, 505. The law does not require that one prove the representations precisely as alleged. All that he need do is to prove the substance and material parts of such representations. The proof was, we think, within these rules.

2. PLEADING: issue, proof and variance: affirmative showing of prejudice.

Aside from this, however, it is not a case of failure of proof of a cause of action, but merely a variance between the allegations and the proof. A failure of proof exists only where no cause of

action is proved, while a variance exists when a cause of action is proved which is not alleged. Now, our statute provides (Code Section 3597):

"No variance between the allegations in a pleading and the proof is to be regarded as material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be shown by proof to the satisfaction of the court, and such proof must also show in what respect he has been so misled, and thereupon the court may order the pleading to be amended upon such terms as may be just."

And, again, it is provided by Section 3600 of the Code that amendments may be made at any time, in furtherance of justice. Under this statute, it is held that amendments

3. PLEADING: amendments: amendment pending motion for new trial.

may be made at any time before final judgment; and in some cases, even after judgment. *Smith v. Howard,* 28 Iowa 51; *O'Connell v. Cotter,* 44 Iowa 48. Again, it is provided, in Section 3760 of the Code:

"Upon any motion for a new trial, for judgment notwithstanding the verdict, or in arrest of judgment, the party whose pleading it is alleged is defective may, if the court considers it necessary, file an amendment setting up the omitted facts, which, if true, would remedy the alleged defects, and such amendment shall be filed before the hearing of the motion, and shall suspend the same. If the facts thus stated would not, if proven, defeat the object of the motion, it shall be sustained. If such new averments would, if proven, defeat its object and are not admitted, they must be denied, or confessed and avoided, by the opposite party within such time as the court shall direct, unless the same are denied by legal operation, and in such case the law of pleading and procedure shall apply, except that the amendment and response need not be verified."

Under this section, it is clear that plaintiff had the right to amend as he did before judgment. But appellant still insists that this amendment does not cure the difficulty. We are of a contrary opinion. In the first place, the variance was not material; for it is manifest that the defendant was in no manner misled. All the testimony relating to the trade, and as to what was said during the negotiations, was produced, and defendant did not claim he was taken by surprise. He was in no manner misled; and the proof, as we think, substantially met the allegations, as made.

II.   Testimony was adduced as to representations and statements made by defendant's agent, having charge of the land or of part of the negotiations for the sale, without direct proof of his authority to make them. Plain-

4. PLEADING: is-
sue, proof and
variance: prin-
cipal and agent.

tiff was not required to allege that the state-ments were made by an agent. Under allega-tions that defendant made them, plaintiff could prove that they were made by his agent. This is the rule in Iowa, and the one generally announced in other jurisdictions. *Boddy v. Henry,* 113 Iowa 462; *Campbell v. Park,* 128 Iowa 181; *John Gund Brewing Co. v. Peterson,* 130 Iowa 301. See, also, 2 Mechem on Agency (2d Ed.) Sec. 1995, and *Reynolds v. Witte,* 13 S. C. 5 (36 Am. Rep. 678).

III.   Again, it is said that plaintiff was permitted to prove representations and statements of defendant, or his agent, after the deal was closed, and the contract executed. This is not true, in fact. The proofs were of statements before the contract was formally executed. But, had they been afterward, we are not disposed to think there was error in receiving the testimony. The court, if called upon, might, in such a case, be required to instruct as to how this testi-mony should be applied; but this is no reason for rejecting the testimony.

IV.   When one of defendant's agents made his repre-sentations as to the character of the land, plaintiff asked as

to his authority for them, and was told that his information came from defendant, himself. This testimony was clearly admissible, not, perhaps, as binding on defendant, but as showing plaintiff's care, and right to rely on the statements made by the agent.

5. FRAUD: reliance on representations: evidence.

V. This record was made during the trial:

"Q. I want you to tell me what Mr. Reed in that conversation said with respect to Mr. Sanborn, how long he had known him and what his business was and his character and reliability, and whether or not you could rely upon what he told you with respect to this land and proposed trade? (Here defendant objected to the question as incompetent, immaterial, irrelevant, and not showing that Reed had any authority to make such representations, and they are simply an opinion. The objections were overruled, and defendant excepted.) A. Mr. Reed told me that Mr. Sanborn was the president of a bank at Menlo, Iowa; he told me he was a man worth $300,000 or $400,000; that he had known him about 30 years; and that I could absolutely rely on the representations and descriptions he gave me in regard to this land. He said that I would be absolutely safe in relying on it. (The defendant then moved to strike the answer, for the reason that that part of the answer, that he could rely on what he said, for the reason that it indicates that there were certain representations made to him by Mr. Sanborn, and the witness is incompetent under the statute of this state to testify to such matters. The motion was denied, and defendant excepted.) "

The argument now made is that the court was in error in permitting the witness to state what Reed, the agent, said, regarding the defendant's financial ability and responsibility. That question does not seem to be raised, by the objections lodged against either question or answer. At any rate, we think it was proper to be considered in its relation to plaintiff's belief and reliance upon the statements, if for no other purpose. *Boddy v. Henry,* supra; *Gee v. Moss,* 68 Iowa 318;

*Mattauch v. Walsh,* 136 Iowa 225; *Shuttlefield v. Neil,* 163 Iowa 470.

VI.   At the time of trial, Sanborn was deceased; but plaintiff was permitted to testify, over objections, that he relied upon the various statements made by defendant and

6. WITNESSES: competency: transactions with deceased: reliance on false representations.

his agent, and was induced thereby to make the trade. He did not, himself, testify to any statements or representations made by the deceased, but simply to his reliance upon what was said.   As to representations made by the agent, the agent being alive, there was no valid objection.   But counsel strenuously argue that, under Section 4604 of the Code, the plaintiff should not have been permitted to testify that he relied upon the representations made.   Under our somewhat liberal interpretation of the statute, we think the testimony was clearly admissible.   See, in support of this view, although not directly in point, *Dysart v. Furrow,* 90 Iowa 59; *Marietta v. Marietta,* 90 Iowa 201; *Furenes v. Eide,* 109 Iowa 511; *Campbell v. Collins,* 133 Iowa 152; *McElhenney v. Hendricks,* 82 Iowa 657; *Graham v. McKinney,* 147 Iowa 164.

This exact question arose in the state of New York, where a similar statute to our own has not been given the liberal interpretation which we have adopted, and the Court of Appeals there said:

"The evidence established the making of statements by the deceased for the purpose of inducing, through the fear of litigation, and through the hope of gaining, by the promise of others releasing their shares in the residue, a compromise; as the result of which, his share in the assets should be increased, and all opposition to the probate of the will withdrawn.   No motion appears from the record to have been made to strike out the evidence of either of these witnesses; and, in the absence of exceptions properly taken to the rulings of the court, the admissibility of evidence received cannot become the subject of review in the appellate court, and

the evidence must be allowed its usual and natural effect. Such being the condition of the case, the testimony of Leurendus and Susan Ashley, that at the time they signed the agreement they believed and relied upon the representations of plaintiff's intestate, was improperly rejected, and the exception to the ruling in that respect must be sustained. The representations had been proven in the case, which were of such a nature as to induce them, by the motives of fear of the results of a litigation, and of the hopes of advantage to them in a compromise, to agree to the arrangement proposed by the deceased legatee. The question, then, was as to whether these representations were believed in and relied upon when the agreement was signed. That was a question of fact, and, like all other facts, a matter of proof. As evidence, its weight and influence are questions for the jury or referee. From the case of *Seymour v. Wilson*, 14 N. Y. 567, the competency of such proof has been recognized. The fact was relevant and material, and the witnesses were competent to testify to it; unless their evidence fell, as it is insisted it does fall, within the prohibition of Section 829 of the Code of Civil Procedure. Was it incompetent because it conceived a personal transaction between the witness and the deceased? I do not think so. What led to the making of an arrangement, and the negotiations which shaped it, had all taken place between the parties at a time prior to the execution of the contract. This contract was the effect of the agreement, upon which the minds of the parties had met in consent. When, therefore, it was presented to the witnesses for their execution, their belief or reliance in the statements which the deceased had theretofore made were relevant facts, within their own knowledge, and which the deceased could not have known or testified to himself. If he were living, he could not have contradicted their testimony in that respect. As was said in *Wadsworth v. Heermans*, 85 N. Y. 639: 'The spirit and purpose of this provision of the Code is equality, to prevent undue advantage; and that purpose should be kept in view

when border questions arise, and lines of distinction are to be drawn.' If we are to give to the language 'concerning a personal transaction,' so broad a signification as to exclude the evidence of facts not constituting the transaction, and not proving any communications between the parties, and which had nothing to do with their negotiations, we should be using the Code provision as an instrument to work inequality, and therefore injustice. The condition of the minds of the witnesses when they consummated their agreement by executing the contract neither proved nor disproved the personal transactions between them and the deceased. That had been proved; and the proof of their state of mind as to belief in, or reliance upon, what they had been informed of, was not a matter of which the deceased could have had any knowledge, and with which he was not concerned at the time." *Hard v. Ashley* (N. Y.), 23 N. E. 177.

This reasoning is sound, and we adopt it as the rule for this jurisdiction. No case seems to hold to the contrary; and, if it did, we would not be inclined to follow it.

VII. The rule of damages announced by the court below was the difference between the market value of the land, as it, in fact, was at the time of the trade, and what it would have been worth in the market, had it been in the condition represented. The further qualification was made that, if defendant represented the land to be of the value of $35 per acre, as a matter of fact, and it was not worth that sum, but less, then the measure of recovery would be the difference between the value as represented, and what it was reasonably worth in the market at the time the trade was consummated. The complaint of these instructions is that they do not announce the true rule, the contention being that the proper measure is the difference in value between what was given, and that which was received.

7. FRAUD: measure of damages; sale of land: fact representation as to value.

It is conceded that there is a conflict in the decided cases on this proposition, and it is also admitted that, in our more

recent cases, we have upheld the rule given by the trial court. See *Stoke v. Converse*, 153 Iowa 274; *Ross v. Bolte*, 165 Iowa 499; *Richards v. Fredrickson*, 171 Iowa 669. This, it is true, gives the defrauded party the benefit of his bargain, if there was one, and we see no reason, either in law or in morals, why he should not have it, especially where he keeps the land and does not demand rescission. No recent case departs from this rule, and we are not disposed to depart from it now. Neither *Mattauch v. Walsh*, 136 Iowa 225, nor *Robbins v. Selby*, 144 Iowa 407, announces a contrary doctrine. Previous cases in this court, as well as authorities from other states, are fully reviewed in the *Stokes* case, supra, and nothing further in this connection need be added.

VIII. We do not notice the claim of misconduct of counsel, as it is without merit. No prejudicial error appears, and the judgment must be, and it is,—*Affirmed*.

EVANS, C. J., WEAVER and PRESTON, JJ., concur.