J. H. BILLICK, Appellee, v. H. W. DAVIDSON, Appellant.

**FRAUD: Fraudulent Representations—Value and Acreage of Land.**
1   Evidence reviewed, and held to sustain finding of misrepresentation by defendant of the number of acres and the value of land transferred to plaintiff.

**BOUNDARIES: Navigable Waters—High-water Mark.** The boundary line of property bordering on a navigable river is the high-water mark of the river.
2

FRAUD: Fraudulent Representations—Defenses—Evidence. That,
3   in the exchange of properties, plaintiff misrepresented the value
of his property, would not have any tendency to show that de-
fendant did not misrepresent his property to the plaintiff.

*Appeal from Poweshiek District Court.*—HENRY SILWOLD,
Judge.

MARCH 20, 1919.

ACTION at law to recover damages on account of al-
leged misrepresentations concerning land conveyed to the
plaintiff.   There was a verdict for the plaintiff, and from
the judgment entered thereon, the defendant appeals.—*Af-
firmed.*

*U. M. Reed* and *J. H. Patton,* for appellant.

*Thomas J. Bray* and *J. G. Shifflet,* for appellee.

WEAVER, J.—At the time of the transaction in question,
plaintiff and defendant were both residents of Brooklyn, in
Poweshiek County, Iowa.   Plaintiff was a farmer, and the
defendant was in business as a real estate agent.   The
former owned a house and lot in the city of Des Moines,
and defendant, or his wife, owned a tract of Des Moines
River bottom land in Polk County, Iowa.   Plaintiff had
never seen, and had no personal knowledge of, the land of
the defendant or of its quantity or quality, and the defend-
ant had never seen and had no personal knowledge of plain-
tiff's city property;  and without making personal examina-
tion on either side, they entered into an agreement for an
exchange.   Each property was subject to a mortgage in-
cumbrance of $1,000.   The contract was reduced to writing,
and provided for an exchange of conveyances, the grantee in
each instrument assuming payment of the existing incum-
brance on the property so acquired;  and the plaintiff, in
further consideration of such exchange, undertook to give

defendant his note for $1,000, and to secure its payment by
an additional mortgage on the land. The contract was purely
ly one of exchange, there being no price fixed for either
property, and no statement or estimate of the value is
found in the writing. A short time after the making of the
contract, deeds were exchanged by the parties. In both
contract and deed, the land conveyed to plaintiff was de-
scribed as follows:

"Government Lot Five (5) in Section Twenty-two (22),
Township Seventy-eight (78) North, Range Twenty-three
(23) West of the 5th P. M., Iowa, being all that part of
the Northwest Quarter (¼) of the Southeast Quarter (¼)
of said Section Twenty-two (22) lying south of the Des
Moines River."

The expressed consideration named in the deed to plain-
tiff is "one dollar and other valuable considerations." In his
petition, plaintiff alleges that, at the time of the exchange,
he had no knowledge or information concerning said land,
and was compelled to rely, and did rely, upon the state-
ments and representations concerning it made to him by
the defendant; that, to induce him to make said exchange
and accept said conveyance, defendant falsely represented
that the tract contained 34½ acres, and was of the actual
market value of $175 per acre, when, in truth and in fact,
there were but 17 acres, and its actual market value was
not to exceed $75 per acre. Other false representations are
also alleged, but the contest upon the trial centered more
particularly about those we have just specified, and we will
confine our discussion to that issue.

The defendant admits the exchange, but denies all
charges of fraud and false representation, and makes coun-
ter charges of false representations by plaintiff of the quali-
ty and condition of the Des Moines property.

With the verdict for plaintiff, the jury returned spe-

cial findings upon interrogatories submitted by the court, which findings may be condensed as follows:

1. That defendant, in negotiating said exchange, did knowingly and falsely represent to plaintiff that the tract of land contained 34½ acres, when in truth it contained but 17 acres;

2. That defendant did knowingly and falsely misrepresent to plaintiff the actual market value of the land;

3. That said false representations were made by defendant for the purpose of deceiving plaintiff and inducing him to make the exchange; and

4. That plaintiff believed and relied upon said representations as true, and was thereby induced to make the exchange and accept the conveyance of the land upon the terms stated in the contract.

As grounds for reversal of the judgment below, it is argued:

I. That there is no sufficient evidence to support a finding that defendant misrepresented the acreage of the land conveyed to plaintiff. This proposition is not sustained by the record. The plaintiff testifies

1. FRAUD: fraudulent representations: value and acreage of land.

specifically that defendant said there were 34½ acres in the tract lying south of the river, and that it was worth $200 per acre. Defendant, while denying that he said there were 34½ acres, admits that he told plaintiff that the "deed called for 34½ acres." He further says he had no actual knowledge of the true measurement, but, from a hasty examination when he bought it, he thought there must be 30 acres of it. On cross-examination, he answered that, when the contract of exchange was made, he knew that plaintiff was not getting 34½ acres of land. He further admits that he told plaintiff that the land was on the south and west sides of the river, and we think he admits sufficient to corroborate the plaintiff's story that he represented the

tract as containing 34½ acres. On this record, it cannot be held that the evidence of misrepresentation by the plaintiff is insufficient to take that question to the jury.

Reference should perhaps here be made to the appellant's contention that, because the record of the original survey indicates that Lot 5, as then measured, contained 34.53 acres, the testimony of plaintiff's witness who made a record of the survey that he found only 17 acres south of the river is without competence or value, unless it be shown that the course of the stream has been changed to the south by gradual and imperceptible encroachment upon the land, or by sudden break or avulsion; and that, in the latter event, a part of Lot 5 may be found on the north side of the river, or covered by its waters, and should be included in the survey and measurement of the land conveyed. It is a sufficient answer to this objection to say that there is no proof that the river has changed its course since the original survey, either gradually or by avulsion, except as a change may be inferred from the fact that the original plat shows the river as covering or cutting off a strip on the north side of the NW¼ SE¼ Section 22, leaving 34.53 acres of that subdivision as Lot 5, south and west of the river; while the present survey shows the river somewhat further to the south, and only 17 acres in said tract. There is no absolute or irrebuttable presumption that the original plat or survey is without error; nor does the fact that but 17 acres of the tract are now found south of the river demonstrate, as a matter of law, that the stream has changed its course.

Defendant undertook to sell and make to plaintiff a deed by which he professed to convey to him a named tract of land "lying south of the Des Moines River." He admits, as a witness, that he told plaintiff that the land lay south or south and west of the river. That description was given and representation made as applicable to conditions

2. BOUNDARIES: navigable waters: high-water mark.

as they existed at the time, and not as to conditions which may have existed ·70 years ago. The Des Moines River is by statute classed as a navigable stream, and its high-water mark on its south side is the north boundary of Lot 5, and the plaintiff is under no obligation to seek any of his land on the bottom of the river or upon the north side of it.

The proof shows that there has been no apparent change in the course of the river since defendant conveyed the land, and, for reasons already stated, we think it immaterial what change, if any, had occurred in the location of the channel before the transaction now in question. If it should be thought otherwise, and that the showing of either a gradual or sudden change in the course of the stream would serve in any degree to relieve the defendant from liability for his misrepresentation of existing conditions, the burden would certainly be upon him to allege and prove it. He has done neither.

As is well known, there are river bottom lands in this state which undergo frequent, if not constant, changes by erosions and overflows and flood deposits, until tracts showing full measurements in the government survey have wholly disappeared, or have been diminished to mere fractions of their former area. Now, if one holding title to a body of land which has been thus reduced to a mere fragment of its original proportions, sells to a buyer having no knowledge of the facts, concealing the truth as to these conditions, and representing the land as containing its full original measurement of acres, would the courts accept it as a good defense that the representations were in strict accord with the record of the government survey? In such case, if plaintiff proves the false representations, would the court make it necessary to his recovery of damages that he assume the burden of showing a change in the course of the stream and the particular manner in which the change had come to pass? To hold in the affirmative upon either

proposition is to make the court an active aid in the perpetration of fraud, instead of an efficient agency in its prevention and punishment.

II.   What we have said in the foregoing paragraph sufficiently disposes of the exception taken.   A paragraph in the court's charge is to the effect that the north or northeast boundary line of the property conveyed to the plaintiff was identical with the high-water mark on the right bank of the river.   This, we think, is true, for the purposes of this case, whether it be true or not, as counsel infer, that the course of the stream had been changed between the date of the original government survey and the date of the deed to the plaintiff.

III.   Defendant requested the trial court to instruct the jury that, if they found that the plaintiff represented his Des Moines property to be much more valuable than it actually was, then it would be proper to consider that fact "as tending to discredit plaintiff's claim that false representations were made by defendant," or that he relied upon them.   This request was refused.

If the plaintiff misrepresented his property to the defendant, we are wholly unable to see how that fact could have any tendency to show that defendant did not misrepresent his property to the plaintiff.   It is true, probably, that, if it appeared that both were guilty of misrepresentation, it would tend very legitimately to show that neither was acting with any special reliance on the representations of the other;   but this is not what the proposed instruction states.

3. FRAUD: fraudulent representations: defenses: evidence.

It is also argued that the damages awarded, $2,505.73, are excessive.   The verdict, though liberal, is well supported by the special finding of the jury, and by the charge of the court upon the measure of damages,—an instruction which

is not challenged by counsel,—and we cannot properly interfere with it.

The case involves no intricate or doubtful questions of law, and the issues of fact were for the jury alone.

The judgment below is—*Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.