R. A. WORKMAN, Appellant, v. T. E. BALES et al., Appellees.

**FRAUD: Pleading—Nondefensive Plea.** Defendants' plea of fraudulent representations and consequent damages is not defensively met by a reply which alleges that plaintiff, because of defendants' false representations, did not receive all the property bargained for. Such a reply is properly stricken, especially when plaintiff predicates no damages thereon.

**FRAUD: Evidence in re Nondefensive Plea.** Matters which may not constitute a defense to a plea of fraud may, nevertheless, be admissible in evidence on the issue of fraud.

**TRIAL: Interrogatories—Nonultimate Fact.** An interrogatory which calls upon the jury to give answer *why* a certain deed was executed, is properly refused submission to the jury.

**DAMAGES: Measure of Damages—Fraud.** The measure of damages for fraud in an executed contract for the exchange of properties is the difference in value of the thing which the defrauded party did receive and the value of such thing had it been as represented.

**TRIAL: Verdict—Remitting Inadvertent Verdict.** Defendant may voluntarily remit an inadvertent verdict in his favor, and thereby avoid a new trial, when plaintiff himself shows that the real intent of the jury was to allow defendant a sum exactly equal to the amount due plaintiff.

*Appeal from Van Buren District Court.*—C. W. VERMILION, Judge.

FEBRUARY 9, 1921.

ACTION on promissory note for $9,000. Defendants, by answer and counterclaim, pleaded fraud. Verdict of jury for defendants, which was remitted, and judgment entered against plaintiff for costs. Plaintiff appeals.—*Affirmed.*

*Starr & Jordan* and *Walker & McBeth,* for appellant.

*Hollingsworth & Blood* and *S. E. Irish,* for appellees.

DE GRAFF, J.—The defendants, T. E. Bales and Myrtle Bales, husband and wife, resided at Stockport, Iowa, the husband being engaged in the hardware business with his father, J. E. Bales. There was a garage next to the building in which the hardware business was conducted, and back of the garage was an electric light plant, owned and conducted by T. E. Bales, who had been granted a light franchise by the town of Stockport. The real estate upon which the electric light plant was situated belonged to the father, J. E. Bales.

In the fall of the year 1917, E. O. Dayton came to Stockport, and informed defendant Bales that he had a farm for sale in Lee County, Iowa, owned by one L. B. Weaver, of Nekoma, Illinois, who had purchased same for his son, but that his son had decided to embark in the hardware business. Dayton also represented to Bales that he was acting for a Mr. Hayes, who had previously owned the farm; that he had sold it to Weaver for Mr. Hayes for $110 an acre; that he had a cash buyer for it; and that he could get $110 an acre for it, any day. He also represented that there were 288 acres in the farm, of which 140 were in cultivation.

After this conversation, defendant decided to buy the Weaver farm, and a contract of sale was entered into on November 7, 1917. A few days prior to the execution of the contract, Dayton took Bales to the farm, and, after driving to about the middle of it, pointed out certain boundary lines, in an attempt to show Bales the 140 acres of cultivated land. There were, in fact, but 97 acres in cultivation. Bales was further informed by Dayton that he had previously sold the adjoining farm, belonging to Reif, for $150 an acre, but that Reif had refused to sign the deed, after the execution of the contract. During the preliminary negotiations, Dayton introduced a man as the Mr. L. B. Weaver formerly mentioned by Dayton, and said that the said Weaver had come to look over the stock of goods in the Bales store, and also to look at the Bales residence, which was a part of the property to be exchanged under the contract. This Weaver proceeded to do.

In truth and in fact, L. B. Weaver was an impostor, and a mere hireling of Dayton's. Furthermore, Dayton was not the agent of Hayes, as represented, as the Hayes farm had been

previously sold by P. J. Hurley, a real estate agent, of Mt. Pleasant, to R. A. Workman and his partner, Frank A. Rhynas, from whose office E. O. Dayton operated. Under the Workman & Rhynas contract, in May, 1917, Hayes sold this farm for $18,000, or $62.50 an acre; and upon the trial, it was shown by a number of neighbor witnesses that this was the reasonable market value of the land in November, 1917.

The Reif farm had not, in fact, been sold for $150 an acre, or at any other price, and the title holder had never authorized Dayton to sell the same, nor had Reif's wife refused to sign the deed, as represented by Dayton.

At about the time the Bales contract was made, the title papers were left at the Stockport Savings Bank, to be subsequently exchanged, after abstracts had been examined. Bales had executed a deed of his real estate, naming as grantee therein L. B. Weaver; but later, he found that this name had been changed to Workman.

The pseudo-agent, Dayton, was not produced as a witness upon the trial of this case, but a Henry L. Weaver was produced, who testified that he lived in Galesburg, Illinois, but at one time had lived in Nekoma; that he knew E. O. Dayton; that he had been told of the deal in question by Dayton; that Dayton had used his name, but "had got his initials L. B., instead of H. L.," but that he knew nothing further about the transaction; that he had never seen the Hayes farm; that he had never been to Stockport; that Dayton had told him about this transaction in some "White Elephant Smoke House;" that he did indorse the note in suit to the plaintiff, Workman; and that he had been paid $25 for his services.

The signature "L. B. Weaver," on the contract of sale and on the assignment thereof to Workman, was made by Dayton, and his only authority for so doing was the consent given by H. L. Weaver, who had no title whatever to the land in question. The sale contract between T. E. Bales and the fictitious L. B. Weaver named a consideration of $33,120; and, under the terms of this contract, Weaver agreed to sell and convey his farm of 288 acres, near Argyle, Iowa, known as the Hayes farm, and Bales agreed to sell and convey his "hardware store, together with the stock and fixtures contained therein, the electric light

plant, together with his franchise from the town of Stockport, for the operation of the same, and his dwelling house property in Stockport.'' The Bales properties were taken at an agreed valuation of $24,120, and the $9,000 note in suit represented the difference in the values of the exchanged properties.

The errors relied upon by appellant for reversal, grouped for the sake of brevity, are: (1) The trial court erred in holding that the failure of defendants to convey the real estate on which the electric light plant was situated was not a defense to the matters pleaded by defendants in their counterclaim. (2) The court erred in the statement of the rule on measure of damages, in the instruction given. (3) The court erred in setting aside the verdict of the jury, and in entering a judgment against plaintiff for costs.

I. Pleadings determine the issues, and the issues control the competency of the evidence offered. Plaintiff's petition made no claim against the defendants, except on the note in question.

1. FRAUD: pleading: nondefensive plea.

Defendants, in answer, admitted the execution of said note, and that by its terms it was due and unpaid, and by a counterclaim pleaded fraud and consequent damages. Plaintiff then filed a reply and an amendment thereto, to both of which, respectively, motions to strike were filed, which were in part sustained by the court. The portion stricken from the reply reads as follows: ·

''Further replying, this plaintiff states that, under the contract of exchange, the defendants were to convey to said L. B. Weaver certain real estate in Stockport, known as the electric light plant, but that, in writing said deed, either through mistake or for the purposes of fraud, the real estate in which said electric light plant is operated was omitted from the deed, but was not noticed until after the papers had all been executed and title passed. Because of this omission, the defendants did not, in fact, give property in said exchange equal to the actual value of the farm in question.''

The portion stricken from the amendment to reply is: ·

''Plaintiff further alleges that, under the provisions of said contract of exchange, defendants were to convey to said Weaver certain real estate in the town of Stockport, known as the electric light plant, and that the defendant, with the fraudulent

purpose and intent to deceive said Weaver and this plaintiff, in preparing their deed omitted therefrom the real estate on which said electric light plant is operated. That said omission and fraud was not discovered by plaintiff until after title had passed to the defendant for the farm in question. That defendants, in furtherance of their scheme to defraud plaintiff, conspired and confederated with J. E. Bales, the father of defendant, to take a conveyance of the electric light plant real estate from them, to prevent plaintiff from obtaining title thereto, and that plaintiff has thereby largely lost the benefit of said contract, and defendants have thus profited by their fraud.''

No damages were predicated on the foregoing allegations. The statement of the issues is a sufficient answer to the first contention of appellant. The facts pleaded in reply were not relevant to the issue joined, and did not constitute a defense. *Billick v. Davidson*, 185 Iowa 801.

The gravamen of the charge in an action for deceit, as defined by the issues herein, is that the defendants were deceived thereby to their injury, and not whether the plaintiff lost or gained. *Spencer v. Taggart*, 162 Iowa 564.

The record in this case discloses that the matters which were pleaded in the reply and amendment thereto, and which were stricken on motion, were quite fully covered by the testimony introduced upon the trial. This evidence was competent. We are differentiating between a rule of damage and a rule of evidence. While not constituting a defense, the evidence was admissible, as bearing upon the question whether or not the alleged false representations were made, and, if made, whether or not they were relied upon. *Vaupel v. Mulhall*, 141 Iowa 365; *Hess v. McCardell*, 182 Iowa 1121.

2. FRAUD: evidence *in re* nondefensive plea.

The correctness of the ruling of the court on the motion to strike was again raised in plaintiff's motion for directed verdict at the close of defendants' testimony, and a special interrogatory was requested by plaintiff, involving the question ''why J. E. Bales executed the deed to T. E. Bales,'' conveying the real estate which was owned by the former and upon which the electric light plant was situated. The trial court overruled the motion to

3. TRIAL: interrogatories: nonultimate fact.

direct, and refused to give the jury the special interrogatory. Both rulings are correct. Sufficient to state that special interrogatories must submit inquiries determinative of some ultimate fact involved in the right to recover.

II. Did the court give to the jury in its instruction the correct rule on the measure of damages?

Plaintiff requested an instruction that "the measure of defendants' recovery cannot exceed the difference between the fair market value of the property they gave in exchange, including the $9,000 note, and the fair market value of the Hayes farm in November, 1917."

4. DAMAGES: measure of damages: fraud.

The court instructed that:

"If you find for the defendants on the claim made in their counterclaim, and that they are entitled to recover thereon, then the measure of their damage would be the difference between the value of the farm in question at the time the defendant T. E. Bales traded for the same, and the value of said farm if it had been as represented by said E. O. Dayton, if any, not exceeding the amount claimed, with interest thereon at 6 per cent per annum from November 26, 1917."

The instruction given has been repeatedly approved by this court. *Stoke v. Converse,* 153 Iowa 274; *Ross v. Bolte,* 165 Iowa 499; *Gray v. Sanborn,* 178 Iowa 456. The reason for this rule is apparent. If otherwise, it would place a premium upon fraudulent speculation, and thereby encourage fraudulent enterprise and activities.

In *Gray v. Sanborn,* supra, the measure of damage contended for appellant herein and the rule stated by the court are distinguished, and it is said:

"The complaint of these instructions is that they do not announce the true rule, the contention being that the proper measure is the difference in value between what was given and that which was received. It is conceded there is a conflict in the decided cases on this proposition, and it is also admitted that, in our more recent cases, we have upheld the rule given by the trial court [citing cases]. This, it is true, gives the defrauded party the benefit of his bargain, if there was one, and we see no reason, either in law or in morals, why he should not have

it, especially where he keeps the land and does not demand rescission. No recent case departs from this rule, and we are not disposed to depart from it now."

III. The jury returned a verdict in favor of the defendants in the sum of $9,586.44, which was the exact amount which the court instructed the jury was due on the note in suit. No one questions the mathematics, but it is contended by appellant that the court was without jurisdiction to enter a judgment for costs against plaintiff, although defendants voluntarily filed a remittitur in the full amount awarded by the jury.

5. TRIAL: verdict: remitting inadvertent verdict.

In the plaintiff's motion for new trial, it is stated as one of the grounds thereof that:

"The amount of the verdict was intended as a verdict for the plaintiff for said amount, or intended by the jury to be a general verdict for the defendants."

In support of his motion, plaintiff attached the affidavits of seven of the jurors, and it was recited in said affidavits that:

"The wrong form of verdict was signed, and that it was their decision to allow the defendants on their counterclaim an amount equal to the amount of the note on which suit was brought, or, in other words, to offset the amount of plaintiff's note with an equal amount allowed to defendants on their counterclaim."

Prior to the time of the ruling on this motion, the defendants filed a remittitur for the full amount of the verdict, and thereupon the court overruled plaintiff's motion, and entered a judgment against the plaintiff for costs.

In what particular may the appellant now complain? The defendants made no objections to the affidavits submitted by the plaintiff in support of his motion for new trial, and we know of no rule of law that will prevent a successful party in suit from remitting damages recovered, when they are inadvertently awarded. Quite often a trial court gives to the successful party the option to accept judgment for a smaller amount, or submit to a new trial. No exemplary damages were involved in this case, and consequently the principle stated in *Ahrens v. Fenton,* 138 Iowa 559, is not applicable. An unintentional error was committed by the jury; and, although the affidavits filed may be

considered hearsay, they were filed by the plaintiff himself, with the intention of showing to the trial court what the verdict should have been, and it is alleged in his motion that the verdict meant one of two things, one of them being "a general verdict for the defendants." The defendants agreed to and concurred in all of the propositions submitted to the court by the plaintiff, and the court thereupon entered judgment for costs. It cannot be said that the trial court invaded the province of the jury by determining the amount to be recovered, but in effect complied with the wishes and the claims of both parties.

This court has recognized the right of a party to remit excessive damages, and in many instances approved the action of the trial court in requiring a remittitur to be filed, in lieu of the granting of a new trial. *Brockman v. Berryhill,* 16 Iowa 183; *Rose v. Des Moines Val. R. Co.,* 39 Iowa 246; *Duffy v. City of Dubuque,* 63 Iowa 171; *McCoy v. Treichler,* 90 Iowa 1; *Newbury v. Getchel & Martin L. & M. Co.,* 100 Iowa 441; *Baxter v. City of Cedar Rapids,* 103 Iowa 599; *Bell v. Kearns,* 153 Iowa 62.

We have given the record in this case a careful consideration, and we find no reversible error therein.—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.